# In the United States Court of Federal Claims

No. 10-540 C

(E-Filed: March 20, 2013)

| | |
|---|---|
| CANVS CORPORATION, ) ) Plaintiff, ) v. ) ) THE UNITED STATES, ) ) Defendant. ) | Motion to Reconsider Order of Dismissal of Patent Claims for Failure to Prosecute; RCFC 41(b); Motion to Reconsider Denied |

Joseph J. Zito, Washington, DC, for plaintiff.

John A. Hudalla, Attorney, with whom were Stuart F. Delery, Principal Deputy Assistant Attorney General, and John Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Lindsay K. Eastman, Attorney, United States Department of Justice, of counsel.

OPINION

HEWITT, Chief Judge

I.   Background

The relevant factual background of this patent infringement action is set out in previous orders, see generally Order of Apr. 23, 2012 (Sanctions Order), Docket Number (Dkt. No.) 24; Order of July 23, 2012 (Show Cause Order), Dkt. No. 36; Order of Oct. 25, 2012 (Dismissal Order), Dkt. No. 48, familiarity with which is presumed. To limit repetition, the court therefore provides only a brief summary.

At the parties' request, discovery and claim construction proceedings in this matter are governed by a scheduling order modeled on the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. See Joint Prelim. Status Report, Dkt. No. 11, at 5-6 (proposing the schedule); Order of Mar. 25, 2011 (Scheduling Order), Dkt. No. 12, at 1-3 (adopting the schedule); Order of Oct. 14, 2011 (Amended Scheduling Order or Am. Scheduling Order), Dkt. No. 18, at 1-2 (amending the schedule).

The court has granted two motions to compel plaintiff to comply with its discovery obligations and one motion to compel plaintiff to comply with the court's scheduling orders.[1]  Sanctions Order 2-4.  Plaintiff did not file responses to defendant's first two motions to compel.[2]  Id. at 2-3.  On April 23, 2012, the court imposed a monetary sanction against plaintiff's counsel, id. at 9, noting that "plaintiff has missed eleven deadlines set by the court's orders or the [Rules of the United States Court of Federal Claims (RCFC)] related to discovery, non-discovery disclosures and productions, and general responsive briefing deadlines," id. at 4; see also id. at 4 n.3 (chart of missed deadlines).  The court invoked the possibility of dismissal of plaintiff's claims, but stated that it did not find dismissal appropriate at that time.  See id. at 9 ("Although the court has not found plaintiff's repeated disregard for its rules and orders sufficiently egregious to warrant dismissal of the action or a citation for contempt, plaintiff's disregard is not harmless."), 9 n.5 ("Other more stringent sanctions such as dismissing the action or treating the failure as contempt of court do not appear to be warranted at this time.").

Despite the monetary sanction and the court's warning, plaintiff "continued to miss filing deadlines."  Dismissal Order 3 n.4.  Plaintiff failed to provide defendant with a claim construction statement and expert report as required by the court's Amended Scheduling Order, submitting instead "a document identified as its claim construction statement that--plaintiff maintain[ed]--contain[ed] the opinions of its expert."  Show Cause Order 6.  The court found the document inadequate for either purpose.  See id. at 5.  Plaintiff also failed to provide defendant with a claim chart detailing its infringement contentions by the date set by the court's Amended Scheduling Order.  Dismissal Order 2.  Plaintiff did not respond to multiple e-mails from defendant requesting the claim chart, and defendant filed a motion to stay claim construction proceedings.  Id. at 2-3.  After defendant filed its motion to stay, plaintiff e-mailed defendant, stating that it intended to rely upon a purported claim chart attached to a previous disclosure (identified as "Supplemental Disclosures"), which plaintiff had sent to defendant three months before the claim chart was due to be provided.  Id. at 3.

The purported claim chart included in plaintiff's "Supplemental Disclosures" (the claim chart) was adequate with regard to accused devices one and two but inadequate with regard to accused devices three through ten.[3]  Id.  Plaintiff acknowledged that the

---

[1]It appears that plaintiff, by serving the required interrogatory responses four days late, failed to comply in a timely fashion with the court's first order to compel.  See Order of Apr. 23, 2012 (Sanctions Order), Docket Number (Dkt. No.) 24, at 2.

[2]By failing to respond to defendant's second motion to compel, plaintiff violated the court's Order of March 22, 2012, which directed plaintiff to file a response.  See Order of Mar. 22, 2012, Dkt. No. 20, at 2.  To limit the delay caused by plaintiff's actions, the court granted defendant's third motion to compel on the day that defendant filed it.  See Sanctions Order 3-4.  It is therefore possible that plaintiff would have filed a response to defendant's third motion to compel if allowed the time to do so.

[3]The ten accused devices identified by plaintiff are listed in the following chart:

2

claim chart purported to address only the first seven of the ten accused devices.  See Pl.'s Supplemental Disclosures of Asserted Claims (Supplemental Disclosures), Dkt. No. 35, at 1 (stating "Claim Chart attached" with regard to accused devices one through seven); Mem. of Law in Supp. of Pl. CANVS Corp.'s Mot. to Show Good Cause Supporting the Amendment of its Infringement Claim Charts, Dkt. No. 38-1, at 1 (stating that CANVS submitted four claim charts "covering seven accused devices"--devices one through seven).

      The claim chart made only "brief mentions" of devices three through seven without describing "[w]here each element of each infringed claim is found within each [accused device]" as required.  Show Cause Order 4 (alterations in original) (internal quotation marks omitted).  During a telephonic status conference (TSC) convened to discuss plaintiff's disclosures, the court asked plaintiff to "point the court to specific pages that would support its view" that the claim chart was adequate with respect to devices three through ten, but plaintiff was unable to do so.  Id.  Plaintiff eventually conceded during the TSC that, although plaintiff's Supplemental Disclosures referred to an attached claim chart for device seven, no such claim chart appeared to have been attached.  Tr. of TSC of July 17, 2012, Dkt. No. 46, at 13:3-8 (plaintiff's counsel).  Accordingly, by plaintiff's own admission, the purported claim chart was provided with respect to only six of the ten accused devices.

      The court directed the parties to file briefing addressing whether plaintiff should be permitted to amend its claim chart.  Show Cause Order 5.  The court explained that, if plaintiff did not show good cause to amend its claim chart, plaintiff "would be entitled to proceed only with respect to accused devices 1 and 2."  Tr. of TSC of July 17, 2012, at 15:5-10 (court); see also id. at 14:23-25 (stating that "[i]t's not clear that a deficiency of this magnitude . . . could be dealt with by amendment").  The clear implication of the court's statements was that, if amendment were not allowed, plaintiff would not be permitted to proceed with respect to devices three through ten, and that, instead, the court would consider dismissing plaintiff's claims with regard to devices three through ten.

| Device Number | Device Name |
| --- | --- |
| 1 | Enhanced Night Vision Goggles (ENVG) |
| 2 | Dual Band Universal Night Sight (DUNS) |
| 3 | Arrowhead Upgrade Program |
| 4 | Pathfinder |
| 5 | AH-1Z Target Sight System (TSS) |
| 6 | Gunship Multi-Spectral Sensor System (GMS2) |
| 7 | Digital Vision Enhancer (DVE) System |
| 8 | The Future Force Warrior (FFW) Weapon Sight Program |
| 9 | Fused Multi-Spectral Weapon Sight (FMSWS or FWS) |
| 10 | Digital Enhanced Night Vision Goggle [sic] (DENVG) |

See Pl.'s Supplemental Disclosures of Asserted Claims, Dkt. No. 35, at 1; defendant's Concordance Chart for Originally Accused Devices, Dkt. No. 43-3, at 1-3.

Cf., e.g., McZeal v. Sprint Nextel Corp., 335 F. App'x 966, 969-70 (Fed. Cir. 2009) (unpublished) (affirming the district court's dismissal for failure to prosecute after the plaintiff failed to make required disclosures, caused delays, displayed "contumacious conduct" and failed to produce a claim chart); Davis-Lynch, Inc. v. Weatherford Int'l, Inc., No. 6:07-CV-559, 2009 WL 81874, at *5 (E.D. Tex. Jan. 12, 2009) ("The Court agrees that if it were to strike [the plaintiff's inadequate preliminary infringement contentions]," instead of allowing the plaintiff to amend them, "it would be forced to dismiss the case for failure to comply with" the court's scheduling order.).

Plaintiff filed Plaintiff CANVS Corporation's Motion to Show Good Cause Supporting the Amendment of its Infringement Claim Charts (Pl.'s Mot. Amend), Dkt. No. 38, requesting leave to amend its claim chart.  Pl.'s Mot. Amend 1-2.  In its order denying plaintiff's request, the court noted that, "'unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts . . . is decidedly conservative and designed to prevent the 'shifting sands' approach to claim construction.'"  Dismissal Order 4, 14 (alteration omitted) (quoting Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 774 (Fed. Cir. 2002)).  The court stated that it was "unable to conclude . . . that plaintiff acted diligently and, therefore, conclude[d] that plaintiff ha[d] not shown good cause to amend its claim chart."  Id. at 8.  The court also concluded that the proposed amended claim chart provided by plaintiff "remain[ed] significantly deficient."  Id. at 12; see also Dkt. No. 41 (proposed amended claim chart).

Neither party addressed in its briefing what action it believed the court should take if the court determined that plaintiff had not shown good cause to amend the inadequate portions of its claim chart.  However, the court concluded that plaintiff's conduct "reflects a . . . 'callous disregard for the rules and regulations of the court.'"  Dismissal Order 14 (quoting Kadin Corp. v. United States (Kadin), 782 F.2d 175, 177 (Fed. Cir. 1986)).  Noting that "the imposition of a lesser, monetary penalty on plaintiff's counsel has not persuaded plaintiff to meet deadlines and otherwise comply with the court's orders and the RCFC," the court dismissed plaintiff's claims regarding devices three through ten, pursuant to Rule 41(b) of the RCFC, for failure to prosecute.[4]  Id.; see also infra note 16 (discussing plaintiff's noncompliance after the sanction was imposed).

Plaintiff now "requests that the Court grant its motion for reconsideration and vacate that portion of [the Dismissal Order] precluding devices 3-10 from this litigation and instead grant[] supplementation."  Pl. CANVS Corp.'s Mot. for Correction of Factual Inconsistencies & for Recons. of the Dismissal of Claims in the Ct.'s Oct. 25, 2012 Order Regarding Infringement Claim Charts (plaintiff's Motion or Pl.'s Mot.), Dkt. No. 49, at 2.

---

[4]The court noted that it would also be appropriate to consider sanctions pursuant to Rule 16(f) of the Rules of the United States Court of Federal Claims (RCFC).  Order of Oct. 25, 2012 (Dismissal Order), Dkt. No. 48, at 5 n.5; cf. infra note 17 (noting that striking plaintiff's infringement contentions pursuant to Rule 16(f) would likely be appropriate under the applicable standard).

Before the court are plaintiff's Motion, filed November 9, 2012; plaintiff's Memorandum of Law in Support of Plaintiff CANVS Corporation's Motion for Correction of Factual Inconsistencies and for Reconsideration of the Dismissal of Claims in the Court's October 25, 2012 Order Regarding Infringement Claim Charts (Pl.'s Mem.), Dkt. No. 49-1, filed November 9, 2012; Defendant's Opposition to Plaintiff's Motion for Reconsideration of the Dismissal of Certain Accused Devices in the Court's October 25, 2012[] Order (Def.'s Resp.), Dkt. No. 57, filed December 11, 2012; and Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Correction and Reconsideration[5] (plaintiff's Reply or Pl.'s Reply), Dkt. No. 58, filed January 4, 2013.

II.   Legal Standards

Rule 54(b) of the RCFC provides that "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  RCFC 54(b).  The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake of fact.  Henderson Cnty. Drainage Dist. No. 3 v. United States (Henderson), 55 Fed. Cl. 334, 337 (2003) (citing Franconia Assocs. v. United States, 44 Fed. Cl. 315, 316 (1999), aff'd, 240 F.3d 1358 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002)); Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993) (citing Weaver-Bailey Contractors, Inc. v. United States, 20 Cl. Ct. 158, 158 (1990)), aff'd, 50 F.3d 1021 (Fed. Cir. 1995)).  "Specifically, the moving party must show:  (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice."  Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)).

Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is "apparent to the point of being almost indisputable."  Pac. Gas & Electric Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part and rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008).  In other words, "manifest" is understood as "clearly apparent or obvious."  Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002).

"A motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court."  Matthews, 73 Fed. Cl. at 525 (quoting Froudi v. United States, 22 Cl. Ct. 290, 300 (1991)).  A motion for reconsideration is not an opportunity to make new arguments that could have been made earlier; "an argument made for the first time in a motion for reconsideration comes too late, and is ordinarily

---

[5]Because Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Correction and Reconsideration (plaintiff's Reply or Pl.'s Reply), Dkt. No. 58, does not contain page numbers, see generally Pl.'s Reply, the court cites plaintiff's Reply using the page numbers generated by the court's Case Management/Electronic Case Files system.

deemed waived." Bluebonnet Sav. Bank, F.S.B. v. United States (Bluebonnet), 466 F.3d 1349, 1361 (Fed. Cir. 2006); Gen. Electric Co. v. United States, 189 Ct. Cl. 116, 118, 416 F.2d 1320, 1322 (1969) (per curiam) (stating that, in general, "requests for post-decision relief will be rejected if the [movant] has, without sufficient excuse, failed to make his point prior to the decision").

III.   Discussion

Plaintiff contends that reconsideration is appropriate because the court's Dismissal Order "is based on mistakes of fact and law." Pl.'s Mem. 6. Specifically, plaintiff contends that the court's conclusion that plaintiff's claim chart was inadequate with regard to accused devices eight, nine and ten, id. at 4-5, 7, and the court's conclusion that plaintiff had not demonstrated diligence warranting amendment of its claim chart, see id. at 7, are errors of fact. Plaintiff contends that the court committed an error of law by not applying the proper legal standard when determining whether to dismiss plaintiff's claims with prejudice. Id. Accordingly, plaintiff contends, the court's denial of plaintiff's request to amend its claim chart and the court's dismissal of plaintiff's claims regarding accused devices three through ten "would work a manifest injustice." Id. at 6. The court addresses the asserted errors of fact and law in turn.

    A.   Plaintiff Identifies No Error of Fact

    1.   Devices Eight, Nine and Ten

Plaintiff contends that the court incorrectly determined that plaintiff's claim chart was insufficient as to accused devices eight (the Future Force Warrior), nine (the Fused Multi-Spectral Weapon Sight) and ten (the Digital Enhanced Night Vision Goggle [sic][6] or DENVG). Id. at 4-5, 7. Plaintiff notes that the court found plaintiff's claim chart to be adequate with regard to accused device one (the Enhanced Night Vision Goggles (ENVG)) and accused device two (the Dual Band Universal Night Sight (DUNS)). Id. at 4; cf. Show Cause Order 3 (finding plaintiff's claim chart adequate with respect to accused devices one and two). Plaintiff contends that "[t]he Court did not appreciate that [devices] (8) and (9) are simply other names for the DUNS . . . [and] that [device] (10) is simply a renamed ENVG," and therefore that devices eight, nine and ten are "covered by" the portions of plaintiff's claim chart found by the court to be adequate. Pl.'s Mem. 4. In support of its view, plaintiff reframes its infringement contentions, describing devices eight, nine and ten as "Accused Project[s]" that make use of "Accused Device[s]" one and two. Id. at 3-4. In the past, plaintiff has referred to each accused device as an accused device, without attempting to classify certain devices as accused projects making use of accused devices. See, e.g., Mem. of Law in Supp. of Pl. CANVS

---

[6]The word "goggle" has been defined as "[t]o stare with wide and bulging eyes." The American Heritage Dictionary of the English Language 754 (4th ed. 2006). The word "goggles" has been defined as "[a] pair of tight-fitting eyeglasses, often tinted or having side shields, worn to protect the eyes from hazards such as wind, glare, water, or flying debris." Id.

6

Corp.'s Mot. to Show Good Cause Supporting the Amendment of Its Infringement Claim Charts (Pl.'s Show Cause Mem.), Dkt. No. 38-1, at 1 (describing devices eight, nine and ten as "accused devices" rather than accused projects).

Defendant responds that "the Court should not allow plaintiff's new arguments [regarding accused devices eight, nine and ten], because 'new legal theories [are] not properly brought for the first time on a motion for reconsideration.'" Def.'s Resp. 4 (second alteration in original) (quoting Corrigan v. United States, 223 F. App'x 968, 971 (Fed. Cir. 2007) (unpublished)). Defendant notes that, at the time of plaintiff's motion to show cause why it should be permitted to amend its claim chart, plaintiff "made no attempt to link" devices eight, nine and ten to the portions of plaintiff's claim chart found adequate by the court, relying instead on separate generic block diagrams to describe its infringement contentions with regard to each of these devices. Id. at 4-5. Defendant contends that "[p]laintiff is wrong to suggest that the Court made a mistake of fact in considering the original motion to show good cause when, in actuality, plaintiff is pivoting away from the legal basis in its original motion." Id. at 5.

Additionally, defendant contends, "plaintiff's new ipse dixit contentions about accused devices 8, 9, and 10 are still deficient under this court's claim construction procedure." Id. at 6 (capitalization and emphasis omitted). Defendant contends that, "[b]y attempting to group disparate accused devices that are manufactured by assorted contractors, plaintiff has failed to comply with the Court's directive to disclose [w]here each element of each infringed claim is found within each apparatus, product, device, process, method, act or other instrumentality." Id. at 6 (second alteration in original) (internal quotation marks omitted).

Defendant argues that "the correlations that plaintiff attempts to draw between the devices that remain in this case and accused devices 8, 9, and 10 do not make sense." Id. Defendant notes that, according to a document produced in discovery and referenced in plaintiff's claim chart, device one (the ENVG) makes use of a mirror-based, analog "beam combiner" to combine infrared and optical images into a composite output image. Id. at 6-7. Defendant states that, in contrast, the website of the manufacturer of device ten (the Digital Enhanced Night Vision Goggle) states that the DENVG "digitally combines video imagery from a low-light-level sensor and an uncooled long-wave infrared (Thermal) sensor." Id. at 7 (internal quotation marks omitted). Defendant contends that this "exemplary difference . . . proves that plaintiff is wrong to conflate the analysis of these two fundamentally different devices." Id.

As an additional example of why plaintiff's grouping of devices is inappropriate, defendant observes that a patent related to device two (the DUNS) was "[t]he basis of the DUNS analysis accepted by the Court," id. at 7, and argues that "[p]laintiff's underlying premise--that distinct accused devices coming from the competitors of [the DUNS manufacturer] would resemble the embodiments of [the patent related to the DUNS]--strains credulity and is not supported by any facts," id. at 8. In other words, defendant

7

appears to argue that, absent evidence to the contrary, the patent covering technology contained in device two would not likely be an appropriate basis for analysis of devices from numerous other manufacturers that compete with the patented technology. See id. at 7-8; see also id. at 8 (noting that plaintiff describes device eight as constituting "devices from 'Litton, L3Insight, Basher, DRS and Night Vision Labs and others'" and describes device nine as constituting "devices from 'L3 Insight[,] the successor to Litton[,] and Northr[o]p Grumman.'" (first and second alterations in original) (quoting Pl.'s Mem. 4)).

In its Reply, plaintiff does not respond to defendant's contentions, stating only that "CANVS'[s] clarification endeavors to demonstrate that there are only four devices, not ten as misapprehended by the Court. This is simply a fact, not a shift in legal theory." Pl.'s Reply 1.

Plaintiff is incorrect. To the extent that plaintiff now asserts that there are four infringing devices rather than ten, see id., plaintiff is directly contradicting its previous position that there were ten infringing devices, see, e.g., Pl.'s Show Cause Mem. 1 (describing ten accused devices). To the extent that plaintiff now contends that devices eight, nine and ten are "covered by" the portions of plaintiff's claim chart addressing devices one and two, see Pl.'s Mem. 4, plaintiff is directly contradicting its previous admission that the claim chart only purported to "cover[] seven accused devices," devices one through seven, Pl.'s Show Cause Mem. 1; see also Supplemental Disclosures 1 (stating "Claim Chart attached" with regard to devices one through seven), and plaintiff's later admission that, in fact, the claim chart was provided with respect to only six of the accused devices, see supra Part I. "[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived." Bluebonnet, 466 F.3d at 1361. Plaintiff's new arguments that there are only four accused devices (employed in ten accused projects) and that devices eight, nine and ten are "covered by" the portion of plaintiff's claim chart addressing devices one and two, Pl.'s Mem. 3-4, are untimely and are deemed to be waived, cf. Bluebonnet, 466 F.3d at 1361.

Additionally, defendant is correct, see Def.'s Resp. 6-8, that plaintiff is attempting to group disparate devices produced by multiple manufacturers without providing any analysis or evidence that devices eight, nine and ten are, in fact, similar enough to devices one and two to be represented by the same portions of plaintiff's claim chart. The evidence provided by defendant suggests that there are significant differences between devices that plaintiff describes as differing only in name. See id. at 6-7 (describing the use of an analog beam combiner in device one as distinguished from a digital beam combiner in device ten). Plaintiff does not rebut--or even mention--defendant's contentions with regard to the grouping of dissimilar devices. Plaintiff's contention that the portion of plaintiff's claim chart addressing devices one and two covers devices eight and nine--themselves comprising multiple devices produced by multiple manufacturers-- and device ten, see Pl.'s Mem. 4, is therefore unpersuasive, cf. Bender v. Maxim

8

Integrated Prods., Inc., No. C 09-01152 SI, 2010 WL 1135762, at *3 (N.D. Cal. Mar. 22, 2010) (finding the use of representative claim charts to describe multiple accused products inadequate where the plaintiff had "not provided an adequate explanation of why the claim charts are representative of all of the accused products").

Plaintiff's contention that accused devices eight, nine and ten are "covered by" the portion of plaintiff's claim chart found adequate by the court, see Pl.'s Mem. 4, does not identify a mistake of fact meriting reconsideration, cf. Henderson, 55 Fed. Cl. at 337 (stating that an error of fact warrants reconsideration).

    2.    Plaintiff's Diligence

In its Dismissal Order, the court denied plaintiff's request to amend its claim chart in part because plaintiff failed to act diligently in seeking information upon which to base its claim chart. See Dismissal Order 10. The court noted that "plaintiff did not make a single discovery request until after defendant filed its motion to stay proceedings," id., and stated that "[i]f plaintiff could foresee that it did not have the information necessary to serve a complete claim chart . . . based on public information and defendant's initial production of documents, then plaintiff should have sought discovery to supplement its information," id. at 9-10. The court further noted that where, as in this case, a plaintiff seeks to amend its claim chart based upon information that was publicly available prior to the time of filing of the claim chart, "a court should be reluctant to permit amendment." Id. at 9 (citing, inter alia, Global Sessions LP v. Travelocity.com LP, No. 6:10cv671 LED-JDL, 2012 WL 1903903, at *4 (E.D. Tex. May 25, 2012) and SmartPhone Techs. LLC v. HTC Corp., No. 6:10cv580 LED-JDL, 2012 WL 1424173, at *3 (E.D. Tex. Mar. 16, 2012)).

Plaintiff contends without elaboration that the court incorrectly rejected plaintiff's "unrebutted evidence . . . that the additional information that it discovered about devices 3 through 10 was not available to it prior to June 18, 2012, in spite of its diligence in searching to locate it." Pl.'s Mem. 7. However, plaintiff does not describe this purportedly unrebutted evidence or why the court erred by rejecting it.[7] Instead, plaintiff offers two new reasons that plaintiff was unable to locate the additional information before submitting its claim chart: that the accused devices are produced under a number of trade names, "making specific identification by project or trade name difficult," Pl.'s Reply 1, and that plaintiff's president has access to classified information, making it more

---

[7] Plaintiff also states that the court erred by rejecting "unrebutted evidence" that plaintiff's claim chart was adequate. See Mem. of Law in Supp. of Pl. CANVS Corp.'s Mot. for Correction of Factual Inconsistencies & for Recons. of the Dismissal of Claims in the Ct.'s Oct. 25, 2012 Order Regarding Infringement Claim Charts (Pl.'s Mem.), Dkt. No. 49-1, at 7. However, plaintiff does not explain its position or the purportedly unrebutted evidence that would support it.

9

difficult for him to communicate with counsel and locate unclassified information upon which to base plaintiff's claim chart,[8] Pl.'s Mem. 9-10.

Plaintiff's new arguments are both untimely--being raised for the first time on reconsideration, cf. Bluebonnet, 466 F.3d at 1361--and unpersuasive. A court should be reluctant to allow amendment of a claim chart based on publicly available information, see Global Sessions LP, 2012 WL 1903903, at *4; SmartPhone Techs. LLC, 2012 WL 1424173, at *3, and plaintiff's sudden ability to find the additional information--within two weeks of the court's order finding much of its claim chart inadequate--belies plaintiff's claim that it was unable, despite diligent efforts, to find the information in the two years between its filing of this case and its service of the claim chart, see Dismissal Order 9. Additionally, if plaintiff was unable to find the information it needed from publicly available sources, a diligent search would have required plaintiff to avail itself of the discovery process. Cf. West v. Jewelry Innovations, Inc., No. C 07-1812 JF (HRL), 2008 WL 4532558, at *2 (N.D. Cal. Oct. 8, 2008); see also Dismissal Order 9-10 ("If plaintiff could foresee that it did not have the information necessary to serve a complete claim chart . . . based on public information and defendant's initial production of documents, then plaintiff should have sought discovery to supplement its information."). The court also agrees with defendant that, "if plaintiff's principal has specialized knowledge about the accused devices, then it is surprising that plaintiff did not leverage this knowledge to target relevant public information or to tailor discovery requests for necessary unclassified information before its due date." Cf. Def.'s Resp. 9.

Plaintiff's request for reconsideration on the issue of plaintiff's diligence in seeking information upon which to base its claim chart relies on untimely and unpersuasive arguments. Plaintiff has therefore not identified a mistake of fact or new evidence that warrants reconsideration on this issue. Cf. Henderson, 55 Fed. Cl. at 337 (stating that an error of fact warrants reconsideration); Matthews, 73 Fed. Cl. at 526 (stating that the discovery of previously unavailable evidence warrants reconsideration).

B.     Plaintiff Identifies No Error of Law

Plaintiff contends that the court applied the incorrect legal standard when determining whether plaintiff's claims related to accused devices three through ten

---

[8] Plaintiff also claims that defendant's initial discovery disclosures were inadequate. See Pl.'s Reply 3 (stating that "the Government should have long ago produced" circuit diagrams of the accused devices (emphasis omitted)). This objection comes too late. If plaintiff found defendant's initial disclosures insufficient, it should have used the discovery process or-- following an attempt to resolve the issue with defendant--filed a motion to compel disclosure. Cf. West v. Jewelry Innovations, Inc., No. C 07-1812 JF (HRL), 2008 WL 4532558, at *2 (N.D. Cal. Oct. 8, 2008) (stating that diligence warranting amendment requires a party to avail itself of the discovery process).

should be dismissed for failure to prosecute pursuant to RCFC 41(b).  Pl.'s Mem. 7.  Plaintiff appears to contend that the court should have applied the "'non-exhaustive list of factors'" that the United States Court of Appeals for the Tenth Circuit has stated that United States district courts "'ordinarily should consider in determining whether to dismiss an action with prejudice under Rule 41(b),'"[9] id. at 8 (emphasis omitted) (quoting Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1143 (10th Cir. 2007)), as well as factors considered by trial courts in the Eighth and Ninth Circuits, id. at 9 (citing Boyle v. Am. Auto Serv., Inc., 571 F.3d 734, 739 (8th Cir. 2009) and Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1277-80 (9th Cir. 1980)).  Plaintiff contends that "[t]he Court must find that the delay was unreasonable under the circumstances, was unexplained by the Plaintiff and there was demonstrated prejudice suffered by the Defendants."  Id. at 8.

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has not required that courts consider a similar list of factors.  See, e.g., Claude E. Atkins Enters., Inc. v. United States, 899 F.2d 1180, 1183-84 (Fed. Cir. 1990) (affirming dismissal pursuant to RCFC 41(b) without discussing a similar mandatory list of factors); Kadin, 782 F.2d at 176-77 (same).  Accordingly, the court was not required to make factual findings of the type described by plaintiff.  Cf. Pl.'s Mem. 8-10.  However, applying the type of factors considered by trial courts in other circuits confirms that dismissal of plaintiff's claims for failure to prosecute is appropriate.  In particular, the five factors considered in the Ninth Circuit are representative and comprehensive with regard to the types of factors considered by trial courts in other circuits when determining whether to dismiss a case for failure to prosecute.

The five factors considered in the Ninth Circuit are:  "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  In re Phenylpropanolamine (PPA) Prods. Liab. Litig. (PPA Prods.), 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotation marks omitted).  "These factors are not a series of conditions precedent before the judge can do anything, but a way for a [trial] judge to think about what to do."[10]  Id.

---

[9]Although the cases cited by plaintiff refer to Rule 41(b) of the Federal Rules of Civil Procedure (FRCP), the RCFC generally mirror the FRCP.  See RCFC 2002 rules committee note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the [FRCP].").  Rule 41(b) of the RCFC is substantially similar to Rule 41(b) of the FRCP.  Compare RCFC 41(b), with FRCP 41(b).  The court therefore relies on authorities interpreting FRCP 41(b) as well as authorities interpreting RCFC 41(b).

[10]Defendant is therefore correct that "the Court need not find actual prejudice to support its dismissal."  Cf. Def.'s Opp'n to Pl.'s Mot. for Recons. of the Dismissal of Certain Accused Devices in the Ct.'s Oct. 25, 2012[] Order (Def.'s Resp.), Dkt. No. 57, at 11.  A court may dismiss a case for failure to prosecute without determining that the defendant was prejudiced.

(internal quotation marks omitted).  These factors are also similar to the standard that plaintiff has requested the court to apply:  whether delay was unreasonable and unexplained and whether defendant was prejudiced.  Cf. Pl.'s Mem. 8; see also id. at 9 (citing Ninth Circuit authority in support of its position).  Although the Federal Circuit does not require that a trial court consider any particular list of factors, it has weighed similar "relevant factors" in determining whether dismissal pursuant to RCFC 41(b) was an abuse of discretion.  See Claude E. Atkins Enters., Inc., 899 F.2d at 1183 (internal quotation marks omitted); see also id. at 1183-84 (discussing factors including past warnings by the court and failure to comply with deadlines); Kadin, 782 F.2d at 176-77 (discussing plaintiff's ignoring of deadlines and court rules as relevant factors).  The court concludes that, even applying the Ninth Circuit's five-factor analysis, which is more comprehensive than that required by the Federal Circuit, dismissal of plaintiff's claims related to accused devices three through ten was appropriate.

The first two factors--relating to the public's interest in expeditious resolution of the litigation and the court's need to manage its docket--are usually reviewed in conjunction and relate to whether a delay is unreasonable.  PPA Prods., 460 F.3d at 1227; cf. Pl.'s Mem. 8 (stating that the court must find that delay was unreasonable and unexplained).  In this case, plaintiff's failure to comply with discovery and filing deadlines has interfered with the expeditious resolution of the litigation and with the court's management of its docket.  Pursuant to the court's original scheduling order, a claim construction hearing was to be held in July 2012.  See Scheduling Order 3.  In part because plaintiff failed to respond to defendant's discovery requests, inhibiting defendant's preparation and drafting of disclosures in advance of the hearing, the court rescheduled the claim construction hearing to December 2012.  See Am. Scheduling Order 2; Def.'s Unopposed Mot. to Amend the Scheduling Order, Dkt. No. 17, at 2-3 (stating the reasons for the proposed amendments).  After plaintiff's continued noncompliance with its discovery obligations--requiring two additional orders to compel compliance, see Sanctions Order 2-4--and plaintiff's failure timely to serve an adequate claim chart, claim construction statement and expert report, the court stayed the claim construction process, indefinitely suspending the claim construction hearing, Show Cause Order 7; see also supra Part I (discussing plaintiff's late and inadequate filings and filings that plaintiff simply failed to make); infra note 13 (discussing additional late filings).

With one exception, see Sanctions Order 8, plaintiff has offered no persuasive explanation of its late and inadequate filings and disclosures; in many instances, plaintiff

---

See, e.g., Price v. McGlathery, 792 F.2d 472, 475 (5th Cir. 1986) (per curiam); Moore v. Telfon Commc'ns Corp., 589 F.2d 959, 967 (9th Cir. 1978) ("Failure to prosecute diligently alone justifies dismissal, even where actual prejudice to the defendant is not shown."); Guy v. City of Wilmington, 169 F.R.D. 593, 596 (D. Del. 1996) (finding, in dismissing for failure to prosecute, that "Defendants have not been prejudiced in their defense by the actions of Plaintiff but that the administration of justice has suffered tremendously").

failed to offer any explanation at all, see, e.g., id. at 2-3 (discussing plaintiff's failure to file responses to defendant's first two motions to compel). The most recent explanations plaintiff offers for the insufficiency of its claim chart--that discovery of information supporting its claims is more difficult because of the access plaintiff's principal has to classified information and because the allegedly infringing devices are produced under a number of trade names--are both untimely and unpersuasive. See supra Part III.A.2 (discussing these explanations). Accordingly, although the length of the delay created by each individual missed deadline or insufficient filing is not great, the court finds the delays occasioned by plaintiff to be unreasonable because they have been numerous and unjustified, because several of the delays were ended only by an order of the court directing plaintiff to act and because the delays have led to repeated rescheduling of events ordered by the court--significantly interfering with the court's efforts to resolve this matter in an expeditious fashion and to manage its own docket.[11] Cf. PPA Prods., 460 F.3d at 1226-27.

Plaintiff's actions have further undermined the expeditious resolution of this case and the management of the court's docket by requiring repeated expenditures of judicial resources. As a result of plaintiff's conduct, the court has focused its resources on conducting status conferences to discuss plaintiff's late and inadequate filings, see Order of Apr. 13, 2012, Dkt. No. 23, at 2 (setting a status conference to discuss sanctions); Order of July 3, 2012, Dkt. No. 30, at 1 (setting a status conference to discuss plaintiff's inadequate disclosures and the resulting implications for the schedule), and on deciding motions to compel and motions to amend inadequate documents, see generally Sanctions Order (discussing motions to compel); Show Cause Order (finding plaintiff's claim construction statement, expert report and most of plaintiff's claim chart inadequate); Dismissal Order (finding no showing of good cause to amend plaintiff's claim chart),

---

[11]Plaintiff contends that "[t]he Government's characterization of the activities of Plaintiff during the preliminary stages of discovery [is] inaccurate" and does not reflect conversations between counsel or the fact that "[a]s many extensions of time were granted to the Government's counsel as to Plaintiff's counsel." Pl.'s Reply 3. However, plaintiff does not describe or provide documentation of any conversations between counsel that would support plaintiff's position. Nor does plaintiff cite any enlargement of time granted to defendant. A review of the docket in this case confirms that the court has not granted defendant an enlargement of time to meet any deadline since the entry of the court's Order of March 25, 2012 (Scheduling Order), Dkt. No. 12. The court granted defendant's request to amend the scheduling order, see Order of Oct. 14, 2011 (Am. Scheduling Order), Dkt. No. 18, at 2 (listing amendments), but the amendment was made necessary in part by plaintiff's failure to make discovery responses and scheduled disclosures, and by plaintiff's identification of additional accused devices after filing its complaint, see Def.'s Unopposed Mot. to Amend the Scheduling Order (Def.'s Mot. Amend), Dkt. No. 17, at 2-3 (stating the reasons for the proposed amendments). Additionally plaintiff overlooks the difference between delays occasioned by duly filed motions for enlargement of time and by plaintiff's failures to comply with the courts rules and orders.

rather than on addressing the merits of plaintiff's claims. The first two factors, therefore, support dismissal. Cf. PPA Prods., 460 F.3d at 1227.

The third factor is the risk of prejudice to defendant. Id. at 1226; cf. Pl.'s Mem. 8 (stating that the court must find that prejudice was suffered by defendant). If the plaintiff "come[s] forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice." Nealey, 662 F.2d at 1281. However, "[i]f [the defendant] does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of [the plaintiff's] excuse." Id. "'A weak excuse may suffice if there has been no prejudice; an exceedingly good one might still do even when there has been some.'" Id. at 1280 (quoting Larios v. Victory Carriers, Inc., 316 F.2d 63, 67 (2d Cir. 1963)). The plaintiff has the burden of persuasion as to both the strength of its excuse and the lack of prejudice to the defendant. Id.

Plaintiff has, more often than not, failed to provide excuses for its noncompliance with the court's rules and orders. For instance, plaintiff did not file a response to plaintiff's first two motions to compel to explain its noncompliance with its discovery obligations.[12] See supra Part I. When plaintiff has provided explanations, the court has, with one exception, see Sanctions Order 8, found them entirely without merit, see, e.g., supra Part III.A.2 (discussing two reasons that plaintiff claims it was unable timely to file a complete and adequate claim chart). Therefore, plaintiff's excuses could be outweighed by relatively little prejudice to defendant. Cf. Nealey, 662 F.2d at 1280; Larios, 316 F.2d at 67.

Plaintiff contends that defendant does not claim to be prejudiced, Pl.'s Mem. 9, and maintains that its actions have caused little delay, see Pl.'s Mot. 1 (describing the delay created by plaintiff as a "short delay" lasting only from June 18, 2012 to July 16, 2012, the time it took plaintiff to offer its proposed amended claim chart after the court found plaintiff's original claim chart inadequate); Pl.'s Reply 2 (describing the delay caused by plaintiff as a delay of less than three weeks, which, plaintiff states, "hardly constitutes a party dragging [its] feet"). Plaintiff also notes that defendant did not originally request dismissal of plaintiff's claims for failure to prosecute. Pl.'s Mem. 8-9.

Plaintiff mischaracterizes the delays it has created and the prejudice it has caused defendant.[13] Defendant does not list the ways in which it has been prejudiced but states

---

[12]In a subsequent telephonic status conference (TSC), plaintiff's counsel stated that "there isn't any really good excuse," that he is "overworked and understaffed" and that he "wish[ed] [he] had a better reason for being behind than that." Tr. of TSC of Apr. 18, 2012, Dkt. No. 56, at 3:16-17, 4:5, 7-8 (plaintiff's counsel).

[13]Defendant states that "plaintiff attempts to recast its efforts in this litigation as demonstrating 'cooperat[ion] with the Defendant to complete the major tasks that are set forth in

that it has been harmed by plaintiff's actions.  See Def.'s Resp. 12 ("[P]laintiff's transgressions have not been costless to defendant and the Court.").  Plaintiff's actions have prejudiced defendant in several ways.  "Failing to produce documents as ordered is considered sufficient prejudice" to support dismissal for failure to prosecute.  PPA Prods., 460 F.3d at 1227.  In this case, plaintiff has repeatedly failed to produce discovery responses and scheduled disclosures in a timely fashion.  See Sanctions Order 2-4; Show Cause Order 2-4, 6.

Prejudice may also be presumed from unreasonable delay, PPA Prods., 460 F.3d at 1227, particularly in complex cases, such as this one--which involves a number of accused devices produced by multiple manufacturers, see Pl.'s Mem. 3-4 (listing devices and manufacturers)--in which "[e]arly preparation and participation are essential," PPA Prods., 460 F.3d at 1228.  Furthermore, defendant has been prejudiced by the additional burden of filing multiple motions to force plaintiff to fulfill its obligations.  Cf. id. (stating that prejudice "may also consist of costs or burdens of litigation").  Perhaps most significantly, however, plaintiff's repeated failure to comply with its obligations has interfered with defendant's ability to draft scheduled disclosures and to prepare for the claim construction hearing originally scheduled for July 2012.  See Scheduling Order 3; cf. Order of Apr. 13, 2012, at 1 (noting, in granting defendant's third motion to compel, that plaintiff had not yet disclosed to defendant its proposed claim terms for construction although the parties were scheduled to meet and confer eleven days later regarding

---

the Scheduling Order.'"  Def.'s Resp. 8 (alteration in original) (quoting Pl.'s Mem. 6).  The court agrees with defendant, however, that "plaintiff's chronicle related to some of its Court-ordered disclosures is demonstrably false."  Cf. id.  Plaintiff filed its revised disclosure of asserted claims on March 5, 2012 although they were due on February 17, 2012, see Sanctions Order 4 n.3, a deadline that was set after plaintiff failed to serve them, as ordered, on September 9, 2011, see Scheduling Order 2 (setting deadline); Def.'s Mot. Amend 2 (stating, on October 13, 2011, that plaintiff had not served its revised disclosure of asserted claims).  Plaintiff was required to serve its proposed claim terms and disclose its expert witness on April 10, 2012, see Am. Scheduling Order 1, but had not done so when defendant filed its third motion to compel on April 13, 2012, Sanctions Order 3-4, and, if plaintiff did so before plaintiff was sanctioned on April 23, 2012, plaintiff did not advise the court of this fact, see id. at 4 n.3 (stating that service of these documents was still pending).  The court cited these four missed deadlines, among others, when sanctioning plaintiff.  See id.  But plaintiff now claims, without acknowledging that it was sanctioned for missing these specific deadlines, among others, or citing evidence to support its position, to have complied with each of these deadlines.  See Pl.'s Mem. 5-6.

Plaintiff's counsel is reminded that, pursuant to Rule 11 of the RCFC, by presenting a brief or motion to the court, he certifies "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that factual representations made in the brief or motion have evidentiary support.  See RCFC 11(b).  The court does not impose sanctions at this time.  Plaintiff shall note that the court may consider sanctions at any time it determines that a filing violates Rule 11(b).  See RCFC 11(c) (providing for sanctions).

proposed claim construction terms). That the court rescheduled, Am. Scheduling Order 2, and then stayed, Show Cause Order 7, claim construction proceedings to mitigate the prejudice to defendant does not render plaintiff's actions harmless. The court concludes that the prejudice to defendant outweighs the excuses offered by plaintiff for the delays it has caused.[14] Cf. Nealey, 662 F.2d at 1280; Larios, 316 F.2d at 67. The third factor, therefore, supports dismissal. Cf. PPA Prods., 460 F.3d at 1227-28.

The fourth factor relates to the importance of addressing cases on their merits. PPA Prods., 460 F.3d at 1226. However, this concern "lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." Id. at 1228 (internal quotation marks omitted). Plaintiff's failure to comply with the court's rules and orders has repeatedly impeded the progress of this case. See supra Part I (summarizing plaintiff's actions).[15] The fourth factor, therefore, does not weigh heavily against dismissing plaintiff's claims. Cf. PPA Prods., 460 F.3d at 1228.

The fifth factor is the availability of less drastic sanctions. Id. at 1226. Relevant considerations include whether the plaintiff's conduct continued after the court imposed lesser sanctions and whether the court warned the plaintiff of the possibility of dismissal. Id. at 1228-29; cf. Claude E. Atkins Enters., Inc., 899 F.2d at 1183-84 (considering past warnings by the court and the plaintiff's continued failure to meet court deadlines); Kadin, 782 F.2d at 176-77 (considering that the plaintiff ignored court deadlines and rules). In this case, the court imposed a monetary sanction on plaintiff's attorney after granting defendant's third motion to compel. Sanctions Order 9. The court has warned plaintiff that it was considering dismissal of plaintiff's claims and that it would consider dismissal in the event of further noncompliance with the court's rules and orders. Id.

---

[14]The types of prejudice identified by plaintiff, "'loss of evidence and loss of memory by a witness,'" Pl.'s Mem. 9 (quoting Boyle v. Am. Auto Serv., Inc., 571 F.3d 734, 739 (8th Cir. 2009)), would appear to be more applicable when failure to prosecute takes the form of excessive delay in bringing a case to trial rather than violation of a court's rules and orders.

[15]Plaintiff briefly contends, without citation to authority, that reconsideration is warranted "because imposing such a harsh, irrevocable sanction [as dismissal for failure to prosecute] on a party for . . . delays occasioned by counsel would work a manifest injustice." Id. at 1. However, as the United States Supreme Court has explained in similar circumstances,

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962); see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396-97 (1993) (quoting a portion of the same).

16

("Although the court has not found plaintiff's repeated disregard for its rules and orders sufficiently egregious to warrant dismissal of the action or a citation for contempt, plaintiff's disregard is not harmless."); id. at 9 n.5 ("Other more stringent sanctions such as dismissing the action or treating the failure as contempt of court do not appear to be warranted at this time."). Despite being sanctioned and warned of the possibility of dismissal, plaintiff failed timely to file an adequate claim construction statement, expert report and claim chart.[16] See Show Cause Order at 3-4, 6. The fifth factor, therefore, supports dismissal. Cf. PPA Prods., 460 F.3d at 1228-29; Claude E. Atkins Enters., Inc., 899 F.2d at 1183-84; Kadin, 782 F.2d at 176-77.

Considering the five factors, the court finds that dismissal of plaintiff's claims regarding devices three through ten for failure to prosecute is appropriate.[17] Cf. PPA Prods., 460 F.3d at 1226.

IV. Conclusion

For the foregoing reasons, plaintiff's Motion is DENIED.

IT IS SO ORDERED.

> s/ Emily C. Hewitt
> EMILY C. HEWITT

---

[16]To the extent that plaintiff contends that it "needs no further sanctions for deterrence" because plaintiff's counsel "employed an additional attorney to devote substantial time to this matter," "shortly" after plaintiff's counsel was sanctioned, Pl.'s Reply 2, plaintiff's view is contradicted by plaintiff's own actions. Plaintiff's counsel was sanctioned on April 23, 2012. See generally Sanctions Order. However, nearly two months later, on June 18, 2013, plaintiff failed to serve an adequate claim construction statement, expert report and claim chart. Order of July 23, 2012, Dkt. No. 36, at 3-4, 6. On July 13, 2012, without explanation, plaintiff served a brief that was due to be filed three days earlier. Id. at 2 n.2. Further violation of the court's rules and orders has not been sufficiently deterred by the monetary sanction.

[17]As the court noted in its Dismissal Order, it would also be appropriate to consider sanctions under Rule 16(f) of the RCFC. See supra note 4. "The standards governing dismissal for failure to obey a court order are basically the same under either" Rule 41(b) or Rule 16(f). Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987); see also Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075 (1st Cir. 1990) (same); Price, 792 F.2d at 474 (same). Compare In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006) (setting out factors to be considered before dismissing claims for failure to prosecute), with Computer Acceleration Corp. v. Microsoft Corp., 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (setting out similar factors to be considered before striking inadequate infringement contentions pursuant to Rule 16(f)). Accordingly, because the court finds that dismissal is warranted under RCFC 41(b) for failure to prosecute, it is likely that striking plaintiff's infringement contentions regarding devices three through ten and dismissing the associated claims under RCFC 16(f) would also be appropriate. Cf. Malone, 833 F.2d at 130.

Chief Judge