# In the United States Court of Federal Claims

No. 10-540 C

(E-Filed: April 14, 2014)

|  |  |  |
|---|---|---|
| CANVS CORPORATION, | ) ) ) | RCFC 54(b); Reconsideration; |
| Plaintiff, | ) ) | Partial Summary Judgment; Patent; Invalid; Anticipation; |
| v. | ) ) | 35 U.S.C. §102(e); Prior Art |
| THE UNITED STATES, | ) ) ) |  |
| Defendant. | ) ) |  |

Joseph J. Zito, Washington, DC, for plaintiff.

John A. Hudalla, with whom were Stuart F. Delery, Assistant Attorney General, and John Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Lindsay K. Eastman, Attorney, United States Department of Justice, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge.

CANVS Corporation (CANVS or plaintiff) brought a patent infringement action, pursuant to 28 U.S.C. §1498(a) (2006), against the United States acting through the Department of the Army (government or defendant). Compl., Aug. 11, 2010, ECF No. 1. CANVS alleges the government unlawfully used or manufactured an invention covered by plaintiff's U.S. Patent No. 6,911,652 filed June 28, 2005 (the '652 patent or patent-in-suit), which is directed toward a device optimizing the user's ability to see in low-light conditions that is particularly useful in military applications. Compl. ¶¶ 3, 15–19; see also '652 patent, ECF No. 59-1. The government moved for summary judgment based on, in relevant part, the alleged invalidity of all seven claims of the patent-in-suit as anticipated under 35 U.S.C. §102(e) (2006) by U.S. Patent No. 5,035,472 filed Jul. 30, 1991 (Hansen or Hansen patent). Def.'s Mot. Summ. J. (SJ Motion), March 12, 2013, ECF No. 59; Hansen patent, ECF No. 59-2; see also Pl.'s Opp'n (SJ Opposition), May 17, 2013, ECF No. 66; Def.'s Reply (SJ Reply), July 12, 2013, ECF No. 69; Pl.'s Sur-Reply (SJ Sur-Reply), Sept. 5, 2013, ECF No. 78.

In granting in part, and denying in part, the Court invalidated claims 1, 2, 3, and 6 of the '652 patent as anticipated by Hansen's prior art, but held a genuine issue of material fact remained whether Hansen anticipated '652 patent claims 4, 5, and 7.  See CANVS Corp. v. United States, 114 Fed. Cl. 59, 75 (2013) (Partial Summary Judgment Opinion).

Now before the Court are the parties' cross-motions for reconsideration regarding the validity of claims 6 and 7 of the '652 patent.  See Def.'s Mot. Recons. (Def.'s Mot. Recons.), Dec. 18, 2013, ECF No. 83; Pl.'s Opp'n. & Cross-Mot. Recons. (Pl.'s Cross-Mot. Recons.), Jan. 10, 2014, ECF No. 85; Def.'s Reply & Opp'n. (Def.'s Recons. Reply), Jan. 24, 2014, ECF No. 87.  The parties both argue that claims 6 and 7 are sufficiently similar to warrant a consistent validity determination; therefore, the Court purportedly erred in finding one invalid and not the other.  See Def.'s Mot. Recons. 1 (claims 6 and 7 warrant a "consistent outcome"); Pl.'s Cross-Mot. Recons. 4 (the "same reasoning" applies to claims 6 and 7).  The parties disagree, however, whether the Court should find both claims valid or invalid.  Defendant asks the Court to invalidate claim 7 for the same reasons it invalidated claim 6, whereas plaintiff asks the Court to reinstate claim 6 for adjudication with claim 7 at trial.  Compare Def.'s Mot. Recons. 1, 5–6 (requesting revision of the Partial Summary Judgment Opinion to invalidate claim 7), with Pl.'s Cross-Mot. Recons. 1 (requesting revision to hold claim 6 not invalid).

The Court agrees that claims 6 and 7 warrant a consistent outcome.  The Court also finds that, in the interests of justice, defendant is entitled to summary judgment on claims 1, 2, 3, and 6 pursuant to the Partial Summary Judgment Opinion, as well as claims 6 and 7 for the additional reasons as set forth herein.  Accordingly, defendant's reconsideration motion is GRANTED, plaintiff's reconsideration motion is DENIED, and the Court's Partial Summary Judgment Opinion, 114 Fed. Cl. 59 (2013), is AMENDED to the extent inconsistent with this opinion.

I.   Background on the '652 Patent and the Hansen Patent

The '652 patent and the Hansen patent both teach devices that enhance the user's ability to see in low-light and no-light conditions through the use of a photon image intensifier and a thermal imager.  See, e.g., '652 patent at [57]; Hansen at [57].  Each device has:  (i) an optical input defining a line of sight; (ii) the means to direct near infrared (photon) energy in the line of sight to a photon-amplifying assembly that creates an enhanced photon-based image; (iii) the means to direct far infrared (thermal) radiation in the line of sight to a thermal imaging assembly that generates a thermal image; and (iv) an optical output or eyepiece permitting the user to view the resulting processed image(s).  See, e.g., '652 patent at [57] & fig. 1, 2; Hansen at [57] & fig. 4, 5; CANVS, 114 Fed. Cl. at 62–65 (discussing the patent processes).

The patent technologies, however, are not identical. Based on the information currently before the Court, at a minimum each patent offers a different range of output images, as well as varying capabilities to adjust the brightness or intensity[1] of those images.

A. The Hansen Patent's Capabilities

A user of a Hansen-patented device turns a switch on the device's exterior housing to view, selectively, distinct spectrum channels—(i) the visible spectrum, ideal for daylight viewing; (ii) the near infrared (photon) spectrum, ideal for twilight viewing; (iii) the far infrared (thermal) spectrum, ideal for total darkness; or (iv) simultaneously the near and far infrared spectrums (photon and thermal), ideal for mixed conditions. Hansen col.5 l.3–10 (claim 1), col.5 l.16–19 (claim 2), col.6 l.18–19 (claim 7) & col. 6 l.20–32 (claim 8). Once the user selects a spectrum channel, he or she may then use "a plurality of manually operable thumb nail rotary switches for controlling reticle brightness and contrast and scene brightness." Id. at col.6 l.32–37 (claim 8).

The preferred embodiment of Hansen's figure 2A is informative.



Id. at fig. 2A (noting locations of switch 30, spectrum channel settings 31A–31D, and thumb nail rotary switches 36 and 34). A single thumb nail rotary switch 36 is designed to control brightness or intensity of (a) the visible spectrum when switch 30 is set to visible spectrum channel 31A; (b) the enhanced photon-based image when switch 30 is set to near infrared channel 31B; (c) the thermal image when switch 30 is set to far infrared channel 31C; and (d) the enhanced composite photon-thermal image when switch 30 is set to combined near and far infrared channel 31D. Id. at col.1 l.60–68 (explaining how a user controls brightness of discrete spectral views by turning switch 30

---

[1] The Hansen patent describes adjusting "brightness," e.g., U.S. Patent No. 5,035,472 col.6 l.36–37 (filed Jul. 30, 1991), ECF No. 59-2 (Hansen or Hansen patent), and the '652 patent describes adjusting "intensity," e.g., U.S. Patent No. 6,911,652 col.6 l.47–52 (filed June 28, 2005), ECF No. 59-1 ('652 patent). However, the terms are synonymous as used in the patents. See CANVS Corp. v. United States, 114 Fed. Cl. 59, 62 n.6 & 72 (2013) (Partial Summary Judgment Opinion).

to elect spectrum channels 31A through 31D), col.2 l.38–48 (same) & col.4 1.26–28 (explaining, in relevant part, that thumb nail rotary switch 36 adjusts scene brightness); see also CANVS, 114 Fed. Cl. at 69 (resolving dispute over the functionality of Hansen's preferred embodiment switches 34 and 36, finding that switch 34 controls scene contrast for both the photon and thermal images, whereas switch 36 controls scene brightness for both the photon and thermal images).[2]

    B.    The '652 Patent's Capabilities

In comparison, the '652 patent does not permit selective viewing of discrete spectrum channels; rather, a user of the '652 patent technology may view only a composite photon-thermal image. '652 patent col.6 l.56–59 (claim 1(j)), col.8 l.1–3 (claims 5(e)), col.8 l.17–19 (claim 6(e)) & col.8 l.33–35 (claim 7(e)); see also id. at col.3 l.8–9, col.4 l.35–39, & col.5 l.23–27, 38–41, 44–47. However, the user can adjust the relative proportions of photon to thermal imagery in the composite view. Id. at col.7 l.19–23 (claim 4) (teaching separate "adjustment assembl[ies]" that are "structured to be independently and separately adjusted relative to one another."); see also id. at col.6 l.44–55 (claim 1(f)–(i)), col.7 l.32–37 (claim 5(d)), col.8 l.12–16 (claim 6(d)) & col.8 l.28–32 (claim 7(d)).

In the preferred embodiment of the '652 patent's figure 1, a knob or button at 36 adjusts how much of the output image is defined by the thermal image, col.5 l.50–60, whereas a knob or button at 46 adjusts how much of the output image is defined by the enhanced photon image, col.5 l.60–67.

---

[2]     Defendant argued, unpersuasively, that switch 34 controls power to the photon imager and switch 36 controls power to the thermal imager. See CANVS, 114 Fed. Cl. at 69 (explaining that if "'[s]witches 34 and 36 . . . respectively control the scene contrast and brightness,' [Hansen] col.4 1.26–28, it would follow that switch 34 controls scene contrast and switch 36 controls brightness"). "[A]lthough defendant's interpretation . . . might offer a more functional device, it does not comport with the [Hansen] patent's seemingly plain language . . . ." Id. at 72; cf. Markman v. Westview Instruments, Inc., 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc) (explaining that extrinsic evidence is admissible to inform the court's understanding of a patent, but not to vary or contradict a patent's terms), aff'd, 517 U.S. 370 (1996).



FIG. 1

Id. at fig. 1 (noting location of knob 36 on the thermal imaging and adjustment assemblies and knob 46 on the photon intensification and adjustment assemblies). Having two distinct adjustment knobs allows the user, while viewing the composite image, to adjust the photon and thermal images separately, in real-time and relative to one another. See id. at col.3 l.9–19 & col.5 l.55–60, 64–67. The claimed invention is intended to allow the user, in mixed environmental conditions, to take advantage of the benefits of photon enhancement and thermal imaging, while minimizing the deficiencies of each. See id. at col.1 l.11–19 & col.2 l.32–36, 40–44. The Court has referred to this capability as the '652 patent's "independent brightness adjustment feature." E.g., CANVS, 114 Fed. Cl. at 61.

II.     The Court's Findings in its Partial Summary Judgment Opinion

In its Partial Summary Judgment Opinion, the Court held claims 1, 2, 3, and 6 of the '652 patent were invalid based on Hansen's prior art, but a genuine issue of material fact remained whether Hansen anticipated claims 4, 5, and 7 of the '652 patent.[3] CANVS, 114 Fed. Cl. at 73, 75.

Claim 1 subparts (a) through (e) and (j) are invalid because they disclosed the general technology of capturing and processing photon and thermal energy in a line of sight into a useful output image, earlier set forth in more detail by Hansen. Compare '652 patent col.6 l.33–43, 56–59, with Hansen at [57] (abstract), col.1 l.12–16 (background), col.3 l.15–39, 43–53 (preferred embodiment), col.4 l.10–20 (same), col.4 l.47–col.5 l.2 (claim 1, general description), col.5 l.29–37 (claim 5, photon processes), col.5 l.38–51 (claim 6, thermal processes), & col.5 l.52–col.6 l.19 (claim 7, spectrum beam splitting and recombination processes); see also Pl.'s SJ Opp'n 8 (admitting that claim 1(a) through (e) "were known in the art").

---

[3]     "Although [the patent statute, 35 U.S.C. §102(e),] refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis." Orion IP, LLC v. Hyundai Motor America, 605 F.3d 967, 974 (Fed. Cir. 2010).

5

Similarly, claim 1 subparts (f) through (h) teach the general ability to adjust the brightness or intensity of the photon and thermal images, which was also anticipated by Hansen.  Compare '652 patent col.6 l.44–52 (claim 1(f)–(h), imaging adjustment), with Hansen col. 1 l.66–68 (summary), col.2 l.44–48 (preferred embodiment), col.4 l.26–28 (same) & col.6 l.32–37 (claim 8); see also discussion supra Part I.A (Hansen's capabilities).  Lastly, claim 1 subpart (i) of the '652 patent discloses the independent operation of those adjustment capabilities, which likewise was taught by Hansen.  Compare '652 patent col.6 l.53–55 (claim 1(i), adjustment operation), with Hansen col.2 l.38–44 (preferred embodiment), and CANVS, 114 Fed. Cl. at 69 n.11 (discussing independent operability versus independent adjustability).

Hansen also teaches to the limitations in the patent-in-suit's claim 2, which depends from its claim 1.  See '652 patent, col.6 l.60–col.7 l.14.  Claim 2 concerns the assembly that amplifies photon energy in the line of sight and produces an enhanced photon-based image.  Id.  Plaintiff does not dispute that Hansen inherently anticipates this technology.  See Pl.'s SJ Opp'n 24–25 (hinging the validity of claim 2 not on the additional limitations in that claim but on the validity of claim 1 on which claim 2 depends); see also Def.'s SJ Mot. 19 (arguing that Hansen's means of amplifying photon energy is "preferably a U.S. Army third generation intensifier tube," see col.4 l.13–14, that reflects "the functioning of a standard image intensifier tube" also employed in the patent-in-suit).

The patent-in-suit's dependent claim 3 also is not novel.  Hansen discloses an optical output or eyepiece capable of displaying a processed image regardless of the eyepiece's physical orientation relative to its image intensifier.  See, e.g., Hansen figs. 4 & 5.  This meets plaintiff's construction of the limitations in claim 3 of the patent-in-suit.[4]  See Pl.'s Revised Cl. Constr. Stmt., ECF No. 59-4, at D28 (interpreting the phrase "visually aligned communication" in the patent-in-suit's claim 3, see col.7 l.15–18, as meaning "[t]he eye piece displays the area of the tactical environment under surveillance regardless of the physical orientation of the eye piece in relation to the photon generation assembly").

However, with respect to claims 4 and 5 of the '652 patent, the Court determined that summary judgment was inappropriate.  CANVS, 114 Fed. Cl. at 73.  There is a genuine, material dispute regarding whether Hansen's adjustment capabilities anticipate the patent-in-suit's "independent brightness adjustment feature," id. at 69–70, 73 (express

---

[4]   For this opinion, as well as the Partial Summary Judgment Opinion, the Court adopts the plaintiff's proposed construction of claim 3.  See CANVS, 114 Fed. Cl. at 66 (citing Def.'s SJ Mot., ECF No. 59, at n.10, in which defendant agrees to abide by plaintiff's construction for purposes of this discussion).

and inherent anticipation), which appears to be set forth in claims 4 and 5(d), see id. at 63, 68.[5]

For example, the '652 patent teaches a device allowing its user—while viewing the composite image in real-time—to turn one knob to adjust the brightness or intensity of the enhanced photon-based image while turning a different knob to adjust separately the brightness or intensity of the thermal image. '652 patent col.3 l.9–19 & col.5 l.55–60, 64–67; see also discussion supra Part I.B ('652 patent's capabilities). As a result, the user can control the relative proportions of photon to thermal imagery in the composite scene in order to achieve an optimum output view based on mixed light and other environmental conditions. See, e.g., id. at col.7 l.19–23 (claim 4) & col.1 l.11–19 (advantages of the invention).

In contrast, based on the information currently before the Court, Hansen teaches only a single knob controlling the brightness or intensity of the scene depending on its spectrum channel setting. See Hansen col.4 l.26–28; CANVS, 114 Fed. Cl. at 69 (holding a single knob adjusts brightness or intensity regardless of spectrum channel setting). The single knob, therefore, would adjust the thermal image in the thermal mode or the photon image in the photon mode; however, it is unclear how that single knob would adjust the mixed thermal-photon image when the device is set to the composite view mode. The Hansen patent teaches that the single knob would adjust the overall "scene brightness" in this composite view. See Hansen col.2 l.44–48 (specification), col.4 l.26–28 (specification) & col.6 l.32–37 (claim 8). However, there is a genuine, material dispute concerning what that means in practice, as well as whether the single knob's functioning in the composite view—whatever that may be—anticipates the dual adjustment capability in the patent-in-suit's composite view. Neither party devoted sufficient attention to answering this question in their summary judgment or reconsideration briefing.[6] This was likely because the answer hinges on extrinsic

---

[5] In its Partial Summary Judgment Opinion, the Court made a definitive finding in plaintiff's favor that claims 4 and 5 teach an "independent brightness adjustment feature." See, e.g., id. at 73. The Court hereby amends that finding to hold, in a more nuanced manner, that there is a genuine dispute of material fact concerning the exact nature and scope of claims 4 and 5 as well as the teachings of the Hansen patent, although claims 4 and 5 appear to teach a novel "independent brightness adjustment feature" based on information currently before the Court.

[6] Plaintiff appears to be arguing, at least in part, that Hansen's single "scene brightness" adjustment knob would be ineffective to adjust the brightness or intensity of the photon-thermal images when Hansen is set to the mode of composite view. This argument is implied from plaintiff's contention that the only means to improve Hansen's photon-thermal composite view would be to adjust the photon and thermal images separately on their discrete spectrum channels before overlaying them in the composite

7

evidence otherwise inappropriate at the summary judgment stage.  In any event, there is not enough evidence currently before the Court to conclude that Hansen's adjustment capabilities expressly or inherently anticipate the '652 patent's "independent brightness adjustment feature" seemingly set forth in its claims 4 and/or 5.

Lastly, concerning the patent-in-suit's remaining claim 6 and claim 7, which disclose the adjustment assemblies for the thermal image and photon image, respectively, the Court granted summary judgment on the former but denied it on the latter.  CANVS, 114 Fed. Cl. at 73.  As explained in the balance of this opinion, the Court should have granted summary judgment with respect to both claim 6 and claim 7, and this error is corrected herein.

III.   Standard of Review

   A.   Motion for Reconsideration

A motion for reconsideration of an interlocutory order is governed by Rule 54(b) of the Rules of the United States Court of Federal Claims (RCFC).  Barry v. United States, 103 Fed. Cl. 425, 429–430 (2012), aff'd, Fournier v. United States, Nos. 2012-5056, -5057 & -5071, 2012 WL 6839784 (Fed. Cir. Nov. 27, 2012).  The Court "possess[es] the inherent power to modify [its] interlocutory orders, and, under common law principles, [it] may reconsider a prior decision, subject to the law of the case doctrine."  Barry, 103 Fed. Cl. at 429–30.; accord Int'l Indus. Park, Inc. v. United States, 102 Fed. Cl. 111, 115 (2011), aff'd, 496 F. App'x 85 (Fed. Cir. 2013); Am. Fed. Bank, FSB v. United States, 74 Fed. Cl. 208, 213 (2006), aff'd, 295 F. App'x 368 (Fed. Cir. 2008).  The Court "may depart from the law of the case, however, upon, inter alia, the discovery of new evidence, intervening chances of legal authority, or to prevent manifest injustice."  Barry, 103 Fed. Cl. at 430; Am. Fed. Bank, FSB, 74 Fed. Cl. at 213.  "Although the contours of interim reconsideration are imprecise, there remains a 'good deal of space for the court's discretion.'"  Barry, 103 Fed. Cl. at 430 (quoting Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)).

"Manifest injustice" is commonly a "manifest error of law or mistake of fact." See Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. 469, 474–75 (2012) (internal quotation and citation omitted), aff'd, 737 F.3d 750 (Fed. Cir. 2013).  The "manifest injustice," however, must be "'apparent to the point of being almost indisputable'" or, "[i]n other words, . . . 'clearly apparent or obvious.'"  Id. at 475 (quoting Pac. Gas &

---

view.  See CANVS, 114 Fed. Cl. at 71–72.  Plaintiff calls this overlay approach "poor man's fusion."  Id.  Plaintiff also contrasts it with the patent-in-suit's so-called "true optical fusion," which is the real-time dual adjustment of photon and thermal elements in the composite view or, in other words, the "independent brightness adjustment feature." See id.

Electric Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part and rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008) and Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002), aff'd, 384 F.3d 1368 (Fed. Cir. 2004), respectively). "While reconsideration 'enables a trial court to address oversights,' [Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 315 (1999), aff'd 250 F.3d 762 (Fed. Cir. 2000)], a party may not raise 'an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed,' [Matthews v. United States, 73 Fed. Cl. 524, 525–26 (2006)]." Int'l Indus. Park, 102 Fed. Cl. at 115; see also Matthews, 73 Fed. Cl. at 525 (Reconsideration "is not intended . . . to give an unhappy litigant an additional chance to sway the court.") (internal quotation and citation omitted).

      B.      Motion for Summary Judgment Based on Anticipation By Prior Art

The Court's Partial Summary Judgment Opinion detailed the legal standards governing motions for summary judgment premised on a prior art's express or inherent anticipation of a patent-in-dispute. See CANVS, 114 Fed. Cl. at 66–67. In brief, a patent's presumptive validity, recognized in 35 U.S.C. § 282(a), can be overcome only by clear and convincing evidence. SRAM Corp. v. AD-II Eng'g, Inc., 465 F.3d 1351, 1357 (Fed. Cir. 2006); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable [factfinder] could find otherwise." Eli Lilly, 251 F.3d at 962.

If, as here, the moving party seeks to establish invalidity based on anticipation (35 U.S.C. § 102(e)(2) (2006)),[7] the moving party must show, by clear and convincing evidence, that "every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in a claim."[8] Brown v. 3M, 265 F.3d 1349, 1351 (Fed. Cir. 2001); accord Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1369 (Fed. Cir. 2008) ("[T]he proponent must show that the four corners of a single, prior art document describe every element of the claimed invention.") (internal quotation and

---

[7]    On September 16, 2011, the Leahy-Smith America Invents Act, Pub. L. 112–29 § 3(b)(1), 125 Stat. 284, 285–87 (2011) amended section 102 of title 35 of the United States Code, removing sub-section 102(e); however, the amendment is applicable only to patent applications, and patents issuing thereon, with effective filing dates eighteen months after enactment, on or about March 16, 2013, see Pub. L. 112-29 § 3(n), 125 Stat. at 293. The Act's amendment, therefore, is inapplicable to this dispute in which the '652 patent was issued in 2005 and the Hansen patent in 1991. See '652 patent; Hansen patent.

[8]    "A reference includes an inherent characteristic if that characteristic is the 'natural result' flowing from the reference's explicitly explicated limitations." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 970 (Fed. Cir. 2001) (quoting Cont'l Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1269 (Fed. Cir. 1991)).

citation omitted); Eli Lilly, 251 F.3d at 970 (requiring "disclos[ure of] every limitation of the claimed invention either explicitly or inherently"); Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998) ("It is well settled that a claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference."). The anticipatory reference, however, must include sufficient "requisite information" about the invention to be "enabling," meaning that it "must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation." Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1306 (Fed. Cir. 2002).

IV. Reconsideration is Appropriate

Although neither party specifically articulates the legal basis for its reconsideration motion, the parties' arguments reflect a shared belief that the Court's inconsistent rulings on claims 6 and 7 represent a mistake of law or fact, which creates a "clearly apparent or obvious" "manifest injustice" given the similarity in the claims' texts and word structures. Additionally, the parties' request for reconsideration is wholly consistent with the Court's authority to address an error in its Partial Summary Judgment Opinion. Cf. Int'l Indus. Park, 102 Fed. Cl. at 115 (addressing attorneys' fees on reconsideration after the court's ruling on liability overlooked the fully briefed fee issue); Fru-Con, 44 Fed. Cl. at 301–302 (addressing issues on reconsideration not addressed in judgment previously entered, including a disputed unpaid contract balance that plaintiff had mentioned in its "Statement of Issues" albeit not in its original or amended complaint). In any event, the Court is within its own inherent authority to amend or correct its own interlocutory ruling.

The similarities in text and word structure in claims 6 and 7 of the patent-in-suit warrant a consistent result on validity. Both claims are divided into five subparts. Subparts (a) through (c) and (e) of claims 6 and 7 are identical. Compare '652 patent col.8 l.4–11, 17–19 (claim 6(a)–(c) & (e)), with id. at col.8 l.20–27, 33–35 (claim 7(a)–(c) & (e)). The only differences in claims 6 and 7 appear in their respective subparts (d). These subparts (d) begin with the same recitation—"a thermal image adjustment assembly and a photon image adjustment assembly . . ." (see '652 patent, col.8 l.12–13 & col.8 l.28–29)—but claim 6(d) adds a limitation related solely to the adjustability of the thermal imager, col.8 l.13–16, whereas claim 7(d) adds a limitation related solely to the adjustability of the photon image intensifier, col.8 l.28–32.[9] For purposes of summary

---

[9] The Court rescinds its prior statement that claim 7 "appears to be missing several words." See CANVS, 114 Fed. Cl. at 63. This conclusion stemmed from the wordiness of the various phrases within the patent-in-suit's claim 7(d), see col.8 l.28–32; however, on further reflection, its meaning is as plain and unambiguous as its counterpart claim 6, see col.8 l.13–16.

judgment, however, this difference is immaterial.  On re-examination, the similar text and word structure render the claims sufficiently similar to merit the same result on validity. The parties agree.  See Pl.'s Mot. Recons. 2, 4; Def.'s Cross-Mot. Recons. 1–2; Pl's SJ Opp'n 6 n.2 (stating the difference between the claims "except for claim 4, are not material to the issues of validity raised by [d]efendant").

Claims 6 and 7 will stand or fall together as two sides of the same coin.  See Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1370 (Fed. Cir. 2003) ("[I]t is permissible to group claims together for disposition where resolution involves the same issues of validity . . . [and] those issues are substantially materially identical.").

V.   Claim 6 and Claim 7 are Anticipated by Hansen's Prior Art and Therefore Invalid

As the Court held in its Partial Summary Judgment Opinion, a genuine issue of material fact surviving summary judgment is whether Hansen's prior art expressly or inherently anticipates the '652 patent's "independent brightness adjustment" feature. CANVS, 114 Fed. Cl. at 73.  For the reasons set forth below, neither claim 6 nor claim 7 teach to this limitation.  Rather, claims 6 and 7 teach to the same limitations as claim 1, which this Court has already held invalid.  See id.

Hansen anticipates the patent-in-suit's claims 6(a)–(c) and (e) and claim 7(a)–(c) and (e) in the same manner and for the same reasons that Hansen anticipates the patent-in-suit's claim 1(a)–(e) and (j).  See discussion supra Part II (discussing claim 1(a)–(e), (j)).  These subparts disclose the general shared technology of (i) an optical input defining a line of suit; (ii) the means of generating a thermal image from a far infrared radiation signature; (iii) the means of generating an enhanced photon-based image from a near infrared radiation signature; and (iv) the ability to generate a single output image combining the thermal and enhanced-photon images.  Compare '652 patent col.6 l.33–43, 56–59 (claim 1(a)–(e) & (j)), with id. at col.8 l.4–11, 17–19 (claim 6(a)–(c) & (e)) & col.8 l.20–27, 33–35 (claim 7(a)–(c) & (e)).  There is nothing novel about these limitations.

This leaves only the question of whether Hansen anticipates claim 6(d) and claim 7(d).  Each subpart(d) discloses a "birds-eye view" of the general process and purpose of each of the adjustment assemblies.  Claim 6(d) teaches a "thermal image adjustment assembly" that adjusts the "thermal imaging assembly" in order to adjust the output thermal image.  Id. at col.8 l.12–16.  Claim 7(d) teaches a "photon image adjustment assembly" that adjusts the photon "image intensification assembly" to adjust the output photon-based image.  Id. at col.8 l.28–32.  These claims are virtually identical to claim 1(f) through (h), which the Court has already determined invalid based on Hansen's prior art.  See id. at col.6 l.44–52 (claim 1(f)–(h)); see also discussion supra Part II (discussing holdings in the Partial Summary Judgment Opinion).  They all teach the general ability to adjust the brightness or intensity of the photon and thermal images.

11

Neither claim 6 nor claim 7 expressly teach the dual adjustment of the photon and thermal images relative to one another. Cf. '652 patent col.7 l.19–23 (claim 4). The Court also lacks any basis to infer that each claim teaches the dual, relational adjustment. Each claim states only that its "adjustment assembly" is "structured to adjust" its imaging assembly, without offering any detail regarding each structure, how each structure accomplishes its adjustment goal, or how each structure relates to the other. See discussion supra Part III.B (discussing "enabling" requirement).

VI.     Conclusion

Summary judgment is appropriate with respect to the patent-in-suit's claims 1, 2, 3, 6, and 7, as each of those claims is anticipated by the Hansen patent's prior art. However, a genuine dispute of material fact remains as to whether Hansen's adjustment capabilities anticipate the "independent brightness adjustment" feature seemingly set forth in the patent-in-suit's claim 4 and claim 5.

Defendant's motion for reconsideration with respect to claim 7 is GRANTED, and plaintiff's cross-motion for reconsideration with respect to claim 6 is DENIED. Furthermore, the Court's Partial Summary Judgment Opinion, 114 Fed. Cl. 59 (2013), is AMENDED to the extent inconsistent with this opinion.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge