# In the United States Court of Federal Claims

No. 10-540 C

(E-Filed: March 31, 2016)

|  |  |  |
|---|---|---|
| CANVS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Patent case; claim construction for U.S. Patent No. 6,911,652; single term in dispute |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

Joseph J. Zito, Washington, DC, for plaintiff.

Michel E. Souaya, Trial Attorney, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and John Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

This is a patent infringement action brought, pursuant to 28 U.S.C. §1498(a), by CANVS Corporation (CANVS or plaintiff) against the United States, acting through the Department of the Army (government or defendant).[1] Compl., ECF No. 1.  CANVS

---

[1] Subsection 1498(a) of Title 28 provides:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a) (2012).

alleges the government unlawfully used or manufactured an invention covered by plaintiff's U.S. Patent No. 6,911,652 (the '652 patent or patent-in-suit). The '652 patent is directed toward a device optimizing the user's ability to see in low-light conditions and is particularly useful in military applications. Compl. ¶¶ 3, 15-19; see also '652 patent, ECF No. 59-1. Claims four and five of the patent-in-suit survived summary judgment on the ground that a genuine dispute of material fact remained as to whether the "independent brightness adjustment" feature of the patent-in-suit was anticipated by the prior art. CANVS Corp. v. United States, 114 Fed. Cl. 59 (2013), amended in part by, 116 Fed. Cl. 294 (2014).

Now before the court are the parties' briefs on claim construction of the term "an optical input structured to define a line of sight" (Disputed Term).

I. Background

Plaintiff's '652 patent was filed with the United States Patent and Trademark Office on February 20, 2003 and issued on June 28, 2005. The invention described by the patent-in-suit is a "Low Light Imaging Device" which enhances the user's ability to see in low-light and no-light conditions through the use of a photon image intensifier and a thermal imager. See, e.g., '652 patent at [57]. A detailed description of the invention claimed by the '652 patent has been provided in previous decisions of this court. See CANVS, 116 Fed. Cl. at 297-98; CANVS, 114 Fed. Cl. at 62-63.

The patent-in-suit consists of seven claims, including three dependent claims which rely upon claim one. This court previously invalidated five of the seven claims by partial summary judgment finding that they were anticipated by prior art, CANVS, 116 Fed. Cl. 294, leaving only claims four and five to be considered for infringement purposes. Defendant has requested claim construction of the Disputed Term, "an optical input structured to define a line of sight," which appears in both claims four and five of the '652 patent. Pl.'s 2d Claim Constr. Br. (Pl.'s 2d Br.), ECF No. 135; Def.'s 2d Claim Constr. Br. (Def.'s 2d Br.), ECF No. 136; Def.'s Resp. 1, ECF No. 142. More specifically, the Disputed Term, underlined below, appears in claim one – upon which claim four depends – and in claim five.

Taken together with claim one, claim four provides:

1. A low light imaging device comprising:

a) an optical input structured to define a line of sight;

    b) a thermal imaging assembly responsive to radiation signatures disposed within said line of sight;

    c) an image intensification assembly responsive to photons at least within said line of sight;

    d) said thermal imaging assembly structured to generate a real time thermal image representative of said radiation signatures;

    e) said image intensification assembly structured to generate a real time enhanced photon based image;

    f) an image adjustment assembly including a thermal image adjustment assembly and a photon image adjustment assembly;

    g) said thermal image adjustment assembly structured to adjust an intensity of said thermal image;

    h) said photon image adjustment assembly structured to adjust said image intensification assembly so as to adjust an intensity of said enhanced photon based image generated thereby;

    i) said thermal image adjustment assembly and said photon image adjustment assembly being structured to be operable independent from one another; and

    j) an output image generation assembly structured to combine said thermal image and said enhanced photon based image to generate a real-time, direct view output image.

> 4. A low light imaging device as recited in claim 1 wherein said thermal image adjustment assembly and said photon image adjustment assembly are structured to be independently and separately adjusted relative to one another.

'652 patent, Claims 1, 4 (emphasis added).

Claim five of the '652 patent is an independent claim which provides:

5. A low light imaging device comprising:

a) <u>an optical input structured to define a line of sight</u>;

3

b) a first imaging assembly structured to generate a thermal image corresponding to radiation signatures disposed at least within said line of sight;

c) a second imaging assembly structured to generate an enhanced photon based image upon detected photons disposed at least within said line of sight;

d) a first image adjustment assembly and a second image adjustment assembly, said first and said second image adjustment assemblies being operable to adjust said first and said second imaging assemblies so as to adjust an intensity of said thermal image and said enhanced photon based image generated thereby;

e) an output image generation assembly structured to combine said thermal image and said enhanced photon based image to generate a single output image.

'652 patent, Claim 5 (emphasis added).

II.   Procedural History

Plaintiff filed this action on August 11, 2010, alleging infringement of all seven claims of its '652 patent by ten other night vision systems that were manufactured by or for the United States without license. Compl. 1-2; CANVS Corp. v. United States, 110 Fed. Cl. 19, 25 n.3 (2013) (listing the ten accused devices). Plaintiff's claims for eight of the ten accused devices were later dismissed for failure to prosecute. CANVS Corp. v. United States, 107 Fed. Cl. 100 (2012) (dismissing plaintiff's claims with respect to devices three through ten); CANVS, 110 Fed. Cl. 19 (denying reconsideration).

Defendant filed a motion for summary judgment arguing the "invalidity of all claims of U.S. Patent No. 6,911,652 as anticipated under 35 U.S.C. § 102(e)(1) by U.S. Patent No. 5,035,472 to Hansen." Def.'s Mot. 1, ECF No. 59 (internal citations omitted). The court granted defendant's motion in part, CANVS, 114 Fed. Cl. at 59, invalidating claims one through three and claim six as anticipated by the prior art. Granting reconsideration in part, the court also invalidated claim seven finding it too was anticipated by the same prior art. CANVS, 116 Fed. Cl. at 294.

The parties agreed that claim construction was not required before the court's decision on defendant's motion for summary judgment. See Def.'s Mot. 2 (adopting plaintiff's position that claim construction is not necessary except for the first term of claim three); see also Pl.'s Claim Constr. Statement, ECF No. 29-1. A schedule for proceeding with claim construction was set following the court's summary judgment decision. Order, ECF No. 96. The parties filed a joint claim construction statement on October 6, 2014, in which defendant identified fifteen terms needing construction. Jt. Claim Constr. Statement, ECF No. 104 App'x B.

4

While claim construction briefing was underway, defendant filed two motions to stay proceedings pending an Inter Partes Review (IPR) by the Patent Trial and Appeal Board (PTAB). See Def.'s 1st Mot. to Stay (Def.'s 1st Mot.), ECF no. 95; and Def.'s 2d Mot. to Stay (Def.'s 2d Mot.), ECF No. 106. The court denied as premature defendant's first motion to stay for IPR because the United States Patent and Trademark Office (USPTO) had yet to institute an IPR. CANVS Corp. v. United States, 118 Fed. Cl. 587, 589 (2014). The USPTO later issued a decision instituting IPR proceedings. Def.'s 2d Mot. 2 (citing FLIR Sys., Inc., No. IPR2014–00773 (PTAB Oct. 23, 2014) ("[FLIR Sys.] demonstrates a reasonable likelihood of prevailing in showing the unpatentability of claims 1–7 of the '652 patent."), ECF No. 106 App'x). On December 19, 2014, the court granted defendant's second motion and stayed proceedings pending the IPR by the PTAB, ECF No. 114.

The stay interrupted the parties' briefing schedule. Plaintiff's opening brief on claim construction was filed prior to the stay, ECF No. 107, but defendant's responsive brief was not. In its brief, plaintiff maintained that no terms required construction. In the alternative, plaintiff proposed a construction for each of the fifteen terms identified by defendant. P.'s Claim Constr. Br. (Pl.'s 1st Br.), ECF No. 107.

Upon notice of the IPR's resolution, the court lifted the stay, and the next month defendant filed its responsive claim construction brief.[2] Order, ECF No. 116; Def.'s Claim Constr. Br. (Def.'s 1st Br.), ECF No. 117. Defendant narrowed its proposal for construction to five terms – regarded as dispositive of the litigation – relating to the optical input and line of sight. Compare Jt. Claim Constr. Statement, ECF No. 104 App'x B with Def.'s 1st Br. 2, 18-19, ECF No. 117. In its reply, plaintiff's focused on the phrases "optical input" and "line of sight" which were the only phrases in dispute in the remaining five terms. Pl.'s Reply, ECF No. 118.[3]

---

[2]   By Joint Status Report, the parties advised that:

> The Inter Partes Review of the '652 patent in suit has concluded pursuant to an agreement between Patent Owner CANVS and Petitioner FLIR as part of a resolution of all disputes between those parties. The agreement includes a withdrawal of the accusations regarding the Dual-Band Universal Night Sight (DUNS) device made in this proceeding in the Court of Claims… The PTAB made no final determinations with respect to invalidity, and thus Claims 4 and 5 of the '652 patent remain valid and asserted in this proceeding.

Jt. Status Rep., ECF No. 115.

[3]   To its reply brief plaintiff attached a new declaration, dated July 23, 2015 and labelled exhibit N, from its expert, James B. Gillespie, a scientist with three decades of experience in the field of night vision technology and Director of Business Development

In light of defendant's new position, the court amended the hearing schedule to clarify with the parties the extent of the construction deemed necessary. See Order, ECF No. 124; Order, ECF No. 130. As clarified in the parties' subsequent briefing, a single dispositive term was identified for construction (Disputed Term). Def.'s Status Rep., ECF No. 132; See generally, Pl.'s 2d Br., ECF No. 135; Def.'s 2d Br., ECF No. 136[4]; Def.'s Resp., ECF No. 142; Pl.'s Resp., ECF No. 143.[5] Following the submission of briefs, the parties offered oral argument only at the Markman hearing held on January 21, 2016; no expert witness testimony was presented.[6] As explained more fully below, the court adopts the following construction of the Disputed Term.

---

and Product Development for Northrop Grumman Corporation. See Gillespie Expert Report 2-3 (Gillespie Rep.) (filed as Ex. C to Pl.'s 2d Br., ECF No. 107-3). Defendant moved wither to strike Mr. Gillespie's declaration or in the alternative, defendant moved to file a responsive expert declaration and surreply brief. Def.'s Mot., ECF No. 119. Plaintiff responded by withdrawing Mr. Gillespie's declaration stating that it did not oppose defendant's motion to strike it, but it did oppose the filing of additional expert reports and briefing. Pl.'s Resp., ECF No. 120. Defendant replied reasserting its motion and requesting further briefing in the alternative. Def.'s Reply, ECF No. 121. Thereafter, the court struck Mr. Gillespie's declaration from the record. Order, ECF No. 122.

[4]   In its November 23, 2015 brief on claim construction, defendant requested additional term construction. Compare Order, ECF No. 130, and Def.'s Status Rep., ECF No. 132, with Def.'s 2d Br. 31, ECF No. 136 ("For the reasons stated herein, Defendant, the United States, respectfully requests that the Court issue an order which adopts Defendant's proposed constructions of terms 1, 4, 5, 8 and 9 of the asserted claims of the patent-in-suit."). Plaintiff moved to strike those portions of defendant's brief seeking construction of terms 4, 5, 8 and 9, because the parties already had agreed to seek construction of term 1 only (Disputed Term). Pl.'s Mot., ECF No. 137. Defendant responded stating that it would not seek further construction. Def.'s Resp., ECF No, 138. The court denied the motion to strike noting that defendant had asked for further construction in its brief but then clarified in its response to the motion to strike that it sought construction of term 1 only (Disputed Term). Order, ECF No. 139.

[5]   For the purposes of this order on claim construction, the court relies on the parties' clarifying briefs (ECF Nos. 135, 136, 142, 143) and notes that the parties reference the same set of exhibits throughout their briefs, Exhibits A-M (submitted with ECF Nos. 107, 117, 118, and 135).

[6]   Appearing for defendant were counsel of record, Michel E. Souaya, and counsel from the Intellectual Property Division for the Department of Justice, Scott Bolton. Mr. Joel Lofgren from the Department of the Air Force also participated on the side of defendant. Appearing for plaintiff were counsel of record, Joseph J. Zito, and Luiz Felipe

III.  Legal Standards for Claim Construction

"It is a 'bedrock principle' of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996)). The construction and meaning of patent claims are questions of law for the court. Markman, 517 U.S. at 388–90. Claim construction is reserved exclusively for claim terms in dispute; the court is not required to construe every claim term of a patent. O2 Micro Int'l Ltd., 521 F.3d at 1362; accord Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1207 (Fed. Cir. 2010).

When construing patent claims, the court looks first to intrinsic evidence, then if needed, to extrinsic evidence. Suffolk Techs., LLC v. AOL Inc., 752 F.3d 1358, 1362 (Fed. Cir. 2014) ("After considering this intrinsic evidence, a court may also seek guidance from extrinsic evidence such as expert testimony, dictionaries, and treatises.") (citing Phillips, 415 F.3d at 1317-18). Intrinsic evidence includes the patent claims and specification as well as the patent prosecution file history. This evidence "is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing Markman, 52 F.3d at 979). The purpose of consulting the prosecution history in construing a claim is to "exclude any interpretation that was disclaimed during prosecution." ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988). Accordingly, "where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." Omega Eng'g., Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003). Such a use of the prosecution history ensures that claims are not "construed one way in order to obtain their allowance and in a different way against accused infringers." Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005) (citing Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995).

---

Oliveira.  Johnathan Walkenstein, Chief Executive Officer of CANVS Corporation and inventor of the patent in dispute, and Dr. Edward Currie from CANVS Corporation were also in attendance and seated with plaintiff's counsel.

Extrinsic evidence also can be considered when determining the meaning and scope of patent claims. Such evidence is "external to the patent and prosecution history, [and may] includ[e] expert and inventor testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. In claim construction, the weight given to the extrinsic record is "less significant than [that given to] the intrinsic record." Phillips, 415 F.3d at 1317 (quoting C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004)). The court may look to extrinsic evidence to resolve the underlying factual issues that inform the construction of a patent claim ("evidentiary underpinnings"), and make the requisite findings. Teva Pharm. USA, Inc., 135 S. Ct. at 841-43.

The court need not rely on extrinsic evidence to learn how one of ordinary skill in the art at the time of invention would construe a claim if such perspective can be ascertained from the intrinsic record alone. V–Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1310 (Fed. Cir. 2005) ("[The intrinsic record] usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of invention."). In general, claim terms are given the ordinary and customary meaning as would be given by one skilled in the art at the time of invention, when reading the claim terms in the context of the specification and prosecution history. See Phillips, 415 F.3d at 1313.

There are, however, two distinct exceptions. Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing Vitronics Corp., 90 F.3d at 1580). The first is the circumstance in which a patentee sets forth a definition by acting as his own lexicographer (the lexicographer exception). The second is the circumstance in which a patentee disavows the full scope of a claim term either in the specification or during prosecution (the disavowal exception). Id.

Invoking the lexicographer exception provides the patentee with the ability to create new meanings for the terms used in the patent. In order to be recognized as his own lexicographer, the patentee must "clearly set forth" an alternative definition that differs from the term's ordinary meaning. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).

In contrast, invoking the disavowal exception allows the patentee to narrow the scope of a term. Without wording in the intrinsic evidence that reflects a clear disavowal, a patentee is entitled to the "full scope of its claim language." Home Diagnostics, Inc. v. LifeScan, Inc., 381 F.3d 1352, 1358 (Fed. Cir. 2004).

Clarity of intent is needed for a patentee to invoke either the lexicographer or the disavowal exception. "There are no magic words that must be used, but to deviate from the plain and ordinary meaning of a claim term to one of skill in the art, the patentee must, with some language, indicate a clear intent to do so in the patent." Hill-Rom

8

Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1373 (Fed. Cir. 2014) cert. denied, 135 S. Ct. 719 (2014).

When possible, claims are to be construed in a manner that maintains their validity. But, "where claim language is clear [, the court] must accord it full breadth even if the result is a claim [that] is clearly invalid." Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1372 (Fed. Cir. 2002).

IV.   Discussion

The Disputed Term to be construed by the court is found in claim one – on which claim four depends – and in claim five of the '652 patent. Claims four and five are the only remaining claims in plaintiff's infringement action.

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| an optical input structured to define a line of sight | None necessary.<br><br>But in the alternative:<br>The entrance aperture(s) that determine(s) the line of sight between the low light imaging device and external objects.<br><br>Or<br><br>One or more optical inputs structured to define a single line of sight between the device and the tactical environment. Pl.'s 2d Br. 3. | The entrance aperture and optical elements that determine the imaging line of sight. Def.'s 2d Br. 17. |

The parties' dispute is two-fold. E.g., Def.'s Resp. 1. First, the parties disagree as to the meaning of "an optical input." Defendant asserts that these three words allow for only a single, "entrance aperture." Defendant asks that the court add the phrase "and optical elements" when it construes the first part of the Disputed Term.

Plaintiff, on the other hand, argues that the Disputed Term needs no construction beyond its ordinary meaning. Invoking long established principles of claim construction, plaintiff posits that because the claim's preamble ends with the word "comprising," the subsequent phrase "an optical input" must be open-ended. Thus, plaintiff reasons, the first part of the Disputed Term allows for more than one optical input.

9

Second, the parties disagree as to the meaning of the phrase "line of sight" in the second part of the Disputed Term. While the parties agree that it allows for only a single line of sight, they dispute the definition of "line of sight" and in turn, the scope of claims four and five. Relying in part on the report of its expert astrophysicist, Dr. Allen Waxman, Ph.D., defendant asserts that, as used in the '652 patent, the phrase "line of sight" impermissibly broadens the Disputed Term's ordinary meaning. Def.'s 2d Br. 18-21, 26 (quoting Waxman Expert Report 6 (Waxman Rep.) (filed as Ex. F to Pl.'s 1st Br., ECF No. 107-6)). Defendant's argument about the meaning of the phrase "line of sight" is closely tied to its argument about how many optical inputs are allowed by the '652 patent. Based on the definition of "line of sight" cited by Dr. Waxman in his report, defendant contends that the Disputed Term in the '652 patent contradicts itself. Defendant reasons that each optical input (if more than one were to be allowed) would have "a [unique] line of sight," and in contravention of that limiting claim language, multiple optical inputs would produce multiple lines of sight.

Refuting defendant's position, plaintiff contends that the court can determine the ordinary meaning of the Disputed Term from the intrinsic evidence alone. Plaintiff asserts that as construed, the Disputed Term allows for a single line of sight from overlapping views of the "tactical environment," generated by any number of optical inputs.

The court addresses in turn the parties' two points of disagreement.

A.   "[A]n optical input" is part of an open-ended claim

Defendant asserts that "an optical input," means that claims four and five allow for a single optical input only. Def.'s 2d Br. 21. Defendant acknowledges the longstanding presumption that if a claim preamble ends with the word "comprising," the articles "a" or "an" in the claim elements that follow are interpreted to mean "one or more." But defendant contends that here, the exception to this presumption applies, and as applied, it limits the claims at issue to one optical input. Id.; Def.'s Resp. 2-3; Claim Construction Hr'g Tr. 20 (Tr.), Jan. 21, 2016, ECF No. 152.

In <u>Baldwin Graphic Systems, Inc. v. Siebert, Inc.</u>, the Federal Circuit referred to this longstanding presumption as a rule that has extremely limited exceptions:

> That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. <u>The exceptions to this rule are extremely limited</u>: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one." The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. An exception to the general rule that "a" or "an" means more than one only arises where the

10

language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.

512 F.3d 1338, 1342-43 (Fed. Cir. 2008) (emphasis added) (citations omitted).

To support its position that the Baldwin exception applies in this case, defendant contends that more than one optical input would create more than one line of sight and thus, would give rise to an ambiguity as to the scope of the claims. Def.'s Resp. 3. But, as addressed below, see section IV.B, it is defendant's own proposed claim interpretation that brings about the ambiguity of which defendant complains. Defendant's suggested construction does not comport with Baldwin's own teaching that the presumption of open-endedness gives way only if there is intentional intrinsic language that is either exclusive or restrictive. Defendant makes a bare argument without referring to any particular language in the claims, specification, or prosecution history that would limit the claims to a single optical input only.

Plaintiff, however, has identified specific language in the specification of the '652 patent suggesting that more than one optical input is allowed. Plaintiff points to language in the specification providing: "The present invention is directed towards a low light imaging device which includes preferably a single optical input which defines a line of sight of the device." Pl.s' 2d Br. 7 (quoting '652 patent, Summary of the Invention, col. 2, [48-53]). The phrase "preferably a single optical input" neither limits nor effects a disavowal of other embodiments; instead, it indicates that multiple optical inputs are contemplated.

The construction defendant seeks would require the court to import a limitation from a preferred embodiment into a claim; this is a disfavored practice. Def.'s Resp. 8; Phillips, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.") (citing Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1366 (Fed. Cir. 2004)). "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" Liebel–Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002). The intrinsic evidence simply does not support defendant's position that an exception to the Baldwin rule applies here. In accordance with the Baldwin rule, the phrase "an optical input" is construed as open-ended and thus, one or more optical input(s) are claimed.

B.     "[L]ine of sight" can be construed based on intrinsic evidence alone

Although the parties' briefs are somewhat convoluted on this point, the parties clarified at oral argument that they agree that the Disputed Term claims a single "line of sight." Plaintiff explains that defendant repeatedly has mischaracterized CANVS's position about how many lines of sight are claimed in the second clause of the Disputed Term ("a line of sight"). Plaintiff asserts that it never has sought to claim more than a single line of sight. Pl.'s Resp. 1-2. Rather, plaintiff points out, it is defendant that has made the argument that multiple optical inputs would result in multiple lines of sight. The argument about these multiples turns on the dictionary definition defendant has put forward for the phrase "line of sight."

Relying on the extrinsic evidence of a dictionary definition provided as background information in Dr. Waxman's expert report, defendant asserts that in the field of low-light imaging, the phrases "line of sight" and "field of view" have difference meanings. The phrase "line of sight" is defined as "the straight line connecting the object and the objective lens of the viewing device." Def.'s 2d Br. 26 (quoting Waxman Rep. 6). The phrase "field of view," however, is defined as "[t]he maximum area that can be seen through a lens or an optical instrument." Waxman Rep. 6. It is the meaning for "field of view" that plaintiff seeks in claim construction. Defendant challenges such construction, arguing that the '652 patent record does not contain a reasonably clear, deliberate, and precise intent to depart from the ordinary meaning of the selected phrase, as would be required if the patentee were acting as his own lexicographer. Absent that intent, defendant asserts, the phrase cannot be construed to mean anything other than its ordinary dictionary definition. Def.'s Resp. 9 (citing In re Paulsen, 30 F.3d 1475, 1480 (Fed. Cir. 1994)). But, defendant misses the mark.

The Federal Circuit has made clear that the ordinary meaning of words as gleaned from the intrinsic record should not be set aside for a dictionary definition that plainly contradicts the use of the words in the patent. Phillips, 415 F.3d at 1322-23 (Courts may rely on dictionary definitions "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.") (quoting Vitronics, 90 F.3d at l584 n.6); Novartis Pharm. Corp. v. Eon Labs Mfg., Inc., 363 F.3d 1306, 1310 (Fed. Cir. 2004) ("For more than 45 years we, and our predecessor court, have looked to the intrinsic record to determine as a matter of claim interpretation which of the available, relevant [dictionary] definitions should be applied to the claim term at issue.") (citing Liebscher v. Boothroyd, 258 F.2d 948, 951 (C.C.P.A. 1958) ("One need not arbitrarily pick and choose from the various accepted definitions of a word to decide which meaning was intended as the word is used in a given claim. The subject matter, the context, etc., will more often than not lead to the correct conclusion."); Inverness Med. Switz. GmbH v. Warner Lambert Co., 309 F.3d 1373, 1379 (Fed. Cir. 2002) ("[W]e must determine whether the specification or prosecution history clearly demonstrates that only one of the multiple meanings was intended."); Texas Digital Sys., Inc. v. Telegenix,

Inc., 308 F.3d 1193, 1203 (Fed. Cir. 2002); Renishaw PLC v. Marposs SpA, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[A] common meaning, such as one expressed in a relevant dictionary, that flies in the face of the patent disclosure is undeserving of fealty.").

The Federal Circuit also has made clear that extrinsic evidence for claim construction, including expert testimony about a dictionary definition, does not determine how a term is defined. Rather, what is dispositive is how that term is construed by one skilled in the art at the time of invention and in view of the intrinsic evidence. Phillips, 415 F.3d at 1313-14 (citing Unitherm Food Sys., Inc. v. Swift–Eckrich, Inc., 375 F.3d 1341, 1351 (Fed. Cir. 2004) (proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record"), rev'd on other grounds, 546 U.S. 394 (2006)).

Defendant's expert cited to "The Photonics Dictionary" in his expert report for the different definitions of "line of sight" and "field of view," Exhibit F 6, but he did not provide a copy of the relevant excerpts with the report he prepared in 2014.[7] To support its legal argument, defendant relied on the different dictionary definitions noted in Dr. Waxman's expert report even though Dr. Waxman himself ultimately decided to "treat the patentee's use of the phrase 'line of sight' as being synonymous with the phrase 'field of view' throughout the remainder of [his] report based on the use of this term in the context of the patent specification." Waxman Rep. 6 (emphasis added). Defendant has misplaced its reliance.

Defendant seeks both to assert the dictionary definition of "line of sight" furnished by its expert, Tr. 27; Def.'s 2d Br. 26, and to disavow its expert's interpretation of the phrase in the same manner as plaintiff, Tr. 23. Defendant's conflicted position appears to have been prompted by Dr. Waxman's own determination that the intrinsic evidence was sufficient to instruct him as to how to define the Disputed Term. See Waxman Rep. 6; Unitherm Food Sys., 375 F.3d at 1351 (The proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record.).

---

[7]    Nor could defendant point to a record location at the claim construction hearing. Tr. 27-28. Moreover, defendant provided no evidence that the definitions Dr. Waxman cited from The Photonics Dictionary were the same at the time the patent was filed in 2003. Making an independent effort to obtain a copy of The Photonics Dictionary to assess its relevance, the court found only a publication bearing that title and containing those exact definitions on a website that allows its users to submit content. See The Photonics Dictionary, http://www.photonics.com/edu/Dictionary.aspx (last visited Mar. 15, 2016).

Plaintiff argues that the Disputed Term needs no construction.  Plaintiff adds that if it does, defendant should not be "allowed to selectively pick and choose from [its] own expert's report the parts [it] like[s] and the parts [it doesn't] like."  Tr. 38.

The court is of the view that the intrinsic record is sufficient to inform this claim construction.  Limiting a line of sight to a discrete imaginary line, as defendant has proposed, is a strained claim construction that would render the device inoperable.  Pl.'s 2d Br. 8-9; Tr. 15-16.  "[T]he straight line connecting the object and the objective lens of the viewing device" cannot define the line of sight when the specification expressly speaks to a "line of sight through which a tactical environment may be viewed."  Compare Def.'s 2d Br. 26 (quoting Waxman Rep. 6), with the '652 patent at col. 4, [3] (emphasis added).  Even if defendant's definition were the more customary meaning accepted in the field at the time of invention, it directly contradicts the intrinsic evidence and thus, cannot stand.  See Renishaw PLC, 158 F.3d at 1250.

Importantly, the court does not look to extrinsic evidence when the intrinsic evidence is sufficient for determining how a person of ordinary skill in the art would interpret, at the time of invention, a claim term.  V–Formation, Inc., 401 F.3d at 1310.  The intrinsic record here needs no supplementation.  As plaintiff has noted, a separate element could be added to claims four and five of the '652 patent that could create a distinct line of sight, Tr. 10 (such as a rear-facing camera Tr. 50), but the "line of sight" iterated in those claims describing the element of "an optical input structured to define a line of sight" is the same "line of sight" referred to as "said line of sight" in the later elements of those two claims.  As construed in the context of the specification and claims, the tactical area to be viewed is conserved by the elements of the claim that refer back to that "said line of sight," such as the thermal imaging assembly (col. 6, [35]), image intensification assembly (col. 6, [37]), first imaging assembly (col. 7, [28]), and second imaging assembly (col. 7, [30]).  Thus, one or more optical input(s) create a single, overlapping line of sight.

Defendant puts forward yet another argument about the two disputed phrases in the Term.  Defendant asserts that if plaintiff relies on the Baldwin presumption to characterize "an optical input" as an open-ended claim allowing more than one optical input, then the same presumption must extend to the second indefinite article of the Disputed Term, specifically the "a" preceding in "a line of sight."  Def.'s Resp. 3.  As reasoned, defendant maintains its position that the number of optical inputs tracks the number of lines of sight.

The Baldwin rule, however, does not lend the support defendant suggests.  The Baldwin rule does not effect further limitations in a claim.  "While the term 'comprising' in a claim preamble may create a presumption that a list of claim elements is nonexclusive, it 'does not reach into each [limitation] to render every word and phrase therein open-ended.'"  Promega Corp. v. Life Techs. Corp., 773 F.3d 1338, 1350 (Fed.

Cir. 2014) (quoting Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1343 (Fed. Cir. 2007)). Because the phrase "structured to define a line of sight" is a limitation on the claim element "an optical input," the article "a" contained therein does not become open-ended under the Baldwin rule.  Instead, it instructs only a single line of sight.

Accordingly, the Disputed Term is construed to allow one or more optical input(s) structured to define a single line of sight.[8]

V.   Conclusion

For the reasons explained above, the Disputed Term of the '652 patent shall be construed as stated.

The schedule for proceeding with expert reports set in the October 14, 2015 order is **SUSPENDED**.  The parties shall file a joint status report by **Monday, May 2, 2016**, stating whether they intend to file dispositive motions following this order and if so, the parties shall propose a briefing schedule.

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge

---

[8] This construction is consistent with the Middle District of Florida's finding in another case in which CANVS asserted infringement of the same '652 patent.  CANVS Corp. v. Nivisys, LLC, No. 2:14-CV-99-FTM-38MRM, 2015 WL 6560621, at *2-3 (M.D. Fla. Oct. 29, 2015), ECF No. 134.